# Exhibit 1

# COMMONWEALTH OF VIRGINIA



MONTGOMERY CIRCUIT COURT
Civil Division
55 EAST MAIN STREET, SUITE 1
CHRISTIANSBURG VA 24073
(540) 382-5760

Summons

To: MELISSA MAYS
3714 BEECHER RD.
FLINT MI 48503

Case No. 121CL18001446-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, July 10, 2018

Clerk of Court: ERICA W. CONNER

by _____
(CLERK/DEPUTY CLERK )

Instructions:



Hearing Official:



Attorney's name:

# COMMONWEALTH OF VIRGINIA



MONTGOMERY CIRCUIT COURT
Civil Division
55 EAST MAIN STREET, SUITE 1
CHRISTIANSBURG VA 24073
(540) 382-5760

Summons

To: PAUL SCHWARTZ
6827 4TH STREET NW
UNIT 101
WASHINGTON DC 20012

Case No. 121CL18001446-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, July 10, 2018

Clerk of Court: ERICA W. CONNER

by _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:

# COMMONWEALTH OF VIRGINIA



MONTGOMERY CIRCUIT COURT
Civil Division
55 EAST MAIN STREET, SUITE 1
CHRISTIANSBURG VA 24073
(540) 382-5760

Summons

To: YANNA LAMBRINIDOU
6687 32ND ST. NW
WASHINGTON DC 20015

Case No. 121CL18001446-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, July 10, 2018

Clerk of Court: ERICA W. CONNER

by _____
(CLERK/DEPUTY CLERK )

Instructions:


Hearing Official:


Attorney's name:

VIRGINIA: IN THE CIRCUIT COURT FOR THE COUNTY OF MONTGOMERY

MARC EDWARDS,

        Plaintiff,

    v.

PAUL SCHWARTZ,

       SERVE:      Paul Schwartz
                  6827 4th Street, NW
                  Unit 101
                  Washington, DC 20012

YANNA LAMBRINIDOU, and

       SERVE:      Yanna Lambrinidou
                  6687 32nd St. NW
                  Washington, DC 20015-2363

MELISSA MAYS,

       SERVE:      Melissa Mays
                  3714 Beecher Rd.
                  Flint MI 48503

       Defendants.

CASE NO. C 18001446-00

**Plaintiff Demands Trial by Jury**

## COMPLAINT

    COMES NOW the Plaintiff, Marc Edwards ("Edwards" or "Plaintiff"), by counsel, and for his Complaint states as follows:

### NATURE OF ACTION

    1.    This is an action at law for defamation; defamation *per se*; tortious interference with contract expectancy, business relationship and economic advantage; common law civil conspiracy; and statutory civil conspiracy under Virginia Code §§ 18.2-499 *et seq*.

## PARTIES

2.      Edwards is a natural person and a citizen of the Commonwealth of Virginia who resides in Blacksburg.  Prior to the events giving rise to this lawsuit, Edwards enjoyed a distinguished reputation in the community at large and an unblemished professional reputation in the fields of education, science, and community advocacy. Edwards is, and at all times referred to herein was, an employee of Virginia Polytechnic Institute and State University ("Virginia Tech"), where he has been employed since 1997 and is currently a University Distinguished Professor.  Edwards teaches courses in environmental engineering, applied aquatic chemistry and engineering ethics.  Edwards' research group conducted the investigative science helping to uncover the 2001-2004 D.C. Lead Crisis and the 2014-2016 Flint Water Disaster.  Time Magazine dubbed Edwards "The Plumbing Professor" in 2004, listing him amongst the four most important "Innovators" in water from around the world.  The White House awarded Edwards a Presidential Faculty Fellowship in 1996; he won a MacArthur Fellowship in 2007; was featured in the book *Engineering Peace and Justice: The Responsibility of Engineers to Society* (2010), and he won the Praxis Award for professional ethics in 2010 from Villanova University. In 2013 Edwards' was the 9th recipient (in a quarter century) of the IEEE Barus Award for "courageously defending the public interest at great personal risk."  In 2016, Edwards was named amongst TIME Magazine's 100 Most Influential people in the World; the World's 50 Greatest Leaders by Fortune Magazine; Politico Magazine's Top 50 Visionaries who have transformed American politics; Foreign Policy Magazines 100 World's Greatest Thinkers; and was short-listed amongst Flint whistleblowers as Time person(s) of the year.  Edwards was co-recipient of the inaugural 2017 MIT Disobedience Award and he received the 2018 AAAS Scientific Freedom and Responsibility award.

2

3.    Defendant Paul Schwartz ("Schwartz") is a natural person and citizen of Washington D.C. residing in Washington D.C.

4.    Defendant Yanna Lambrinidou ("Lambrinidou") is a natural person and citizen of Washington D.C. residing in Washington D.C.

5.    Defendant Melissa Mays ("Mays") is a natural person and citizen of Michigan residing in Flint, Michigan.

## JURISDICTION AND VENUE

6.    Jurisdiction is proper in this Court pursuant to Virginia Code § 17.1-513, as the asserted rights and interests of the Plaintiff in controversy exceeds $25,000, exclusive of interest and costs.  In addition, personal jurisdiction is proper because each Defendant has established sufficient contacts with the Commonwealth of Virginia, including but not limited to, when defendants each, both individually and acting as conspirators in concert and together as members and representatives of a non-profit organization known as the Campaign for Lead Free Water ("Campaign"), participated in drafting, signing, electronically communicating and/or mailing a damaging defamatory and tortious letter and email to Plaintiff's employer in Virginia.  Further, this action arises out of conduct causing tortious injury by an act in this Commonwealth, and the Defendants are therefore subject to the personal jurisdiction of this Court pursuant to Virginia's Long Arm Statute, Virginia Code § 8.01-328.1 (A)(3).

7.    Venue is proper in Montgomery County, Virginia, pursuant to Virginia Code § 8.01-262, because the events alleged herein occurred in Montgomery County, Virginia, and the causes of action arose from Defendant's acts and omissions in Montgomery County, Virginia, and because Plaintiff was damaged in Montgomery County, Virginia.

## FACTS

8.     From 2007 to 2010, Lambrinidou and Edwards were professional collaborators and friends who worked together on water lead issues in Washington D.C.  Edwards and Lambrinidou also collaborated on research grants and obtained funding via two grants from the National Science Foundation as well as a grant from the Robert Wood Johnson Foundation.

9.     From 2009-2015, approximately $275,000 in research funding was directed through said Virginia Tech grants to Lambrinidou's non-profit, known as *parents for nontoxic alternatives*."  In 2010, Edwards and Lambrinidou co-taught a Virginia Tech class that eventually became titled "Engineering Ethics and the Public" ("the class").

10.     On May 23, 2010, Lambrinidou wrote written correspondence to Edwards:

> "**your [Edwards'] visit made me realize a level of attachment on my part** I didn't know existed.  So I'm scared now and worried. It is why I was trying to tell you Friday night – and couldn't even begin to be articulate – that maybe I just need a new career that involves no collaboration whatsoever! I wasn't serious of course – or not yet anyway. But the challenge in front of me is new and somewhat overwhelming.  My goodness."

11.     Edwards perceived the note as a romantic advance, which he declined by phone, explaining to Lambrinidou that while he valued their friendship and collaboration, he was committed to his marriage.

12.     Thereafter, on May 27, 2010, Lambrinidou wrote another communication to Edwards:

> "[I] no longer know if you'll actually return my calls anymore, even if they are strictly about work. Like today. From the social world I live in, this feels hurtful and traumatic, but I'm sure there's a reason for it and a message I am supposed to understand…..Rest assured, I am not writing to propose another discussion or seek an explanation. I am assuming that if things could be clearer they would and I'll have to make peace with my confusion and dismay."

4

13.     On November 28, 2010, Lambrinidou wrote Edwards:

> "…the message I've gotten from you for the past while has been that you have committed yourself to that small little box of rigid boundaries, exclusivity, and minimal outside interactions to meet the requirements of your logic tree and bring some old equilibriums back into your life. As much as I disagree with the approach, and have known that the box you're trying to squeeze yourself into doesn't fit you, I have also tried my best to accept the circumstances and make quite serious emotional adjustments that have not made sense to me or come easy…"

14.     Upon receipt of this correspondence, Edwards again affirmed his commitment to his wife and marriage.

15.     Over the next few years, Edwards and Lambrinidou exchanged extensive communications via phone and e-mail, as they continued their advocacy work on lead in water and finished up grants in progress. Edwards repeatedly affirmed platonic boundaries to their relationship. While acknowledging and crediting, both publicly and privately, the value of their collaboration and friendship, Edwards made it clear that he would not cross those boundaries in his relationship with Lambrinidou.

16.     By way of example, on July 21, 2013 Edwards emailed Lambrinidou, "The bottom line for me is that I am married to the love of my life, and it is my foremost duty to draw the lines [to] protect my highest priorities, which are my family and marriage."

17.     Edwards never engaged in or acquiesced to romantic conduct with Ms. Lambrinidou in any way.

18.     Within weeks of his July 21, 2013 e-mail, quoted above, Edwards and Lambrinidou decided they would no longer co-teach the class together. The two then decided that Edwards would lead teaching of the course.

19.     In exchange, Lambrinidou was to focus her funded efforts, conducting research related to the class and co-authoring peer reviewed papers with Edwards reporting the results.

5

Edwards coordinated research for Lambrinidou on the class throughout 2014 and 2015, but Lambrinidou never produced or published the research on the course.

20. During August 2015, Lambrinidou began to have disputes regarding intellectual property with Edwards. Among other things, she questioned whether Edwards could continue to teach the class that they had co-developed, or put into practice ideas they had jointly developed and published. Edwards immediately recommended they address her concerns through faculty reconciliation services at Virginia Tech. Lambrinidou declined to participate in this program.

21. In early 2016, after her funding on the NSF grant had ended, Lambrinidou again raised concerns about Edwards teaching the class, Edwards again suggested mediation. Lambrinidou claimed no interest in mediation and the two had a phone call that was unsuccessful in resolving their professional disagreement.

22. Course materials developed under Edwards and Lambrinidou's National Science Foundation grant had been disseminated and are available for other professors to use with proper attribution. While Lambrinidou acknowledged that Edwards could legally use the materials with proper attribution, she also wrote that Edwards would be "indecent and immoral" if he did so. She later verbally claimed that "anyone could use the course materials for teaching except you [Edwards]," and threatened to "go public" with statements that he was "stealing" the class from her, despite having acknowledged Edwards' legal right to use the course materials with attribution.

23. Following these events and related circumstances, Lambrinidou has harbored severe and persistent animosity towards Edwards in relation to the class.

24. Upon information and belief, Lambrinidou made repeated negative statements regarding Edwards to each of the co-defendants. Lambrinidou made a false harmful statement of

facts regarding Edwards to Schwartz, that caused Schwartz to act with actual and common law malice towards Edwards. For these and other reasons, including differences regarding community activism and other issues surrounding the Flint water crisis (where Mays lived and had a vested financial interest in generating attention in the Flint Water Crisis (see *infra,* para. 22)) and associated topics, the co-defendants all harbor ongoing personal animosity toward Edwards.

25.     Each of the defendants has made numerous statements expressing malice and resentment toward the credit and accolades Edwards has received. Each of the defendants has made numerous statements that are inaccurate and replete with misrepresentations and express umbrage toward the results and methods of Edwards' water testing, as well as toward Edwards' public statements.

26.     The Defendants harbor various financial, professional and social incentives to make negative and damaging statements regarding Edwards and his work. For example, Mays is the named plaintiff in a multi-million-dollar class action lawsuit involving the Flint water crisis, alleging harm to her family from lead and copper exposure. Edwards (and Virginia Tech) had provided her with data in 2015 and early 2016 demonstrating the lead and copper levels in her home were not elevated above Federal action levels.

27.     On July 18-19, 2016, Defendants Mays, Lambrinidou, and Schwartz, as well as others, formed a group known as the Campaign for Lead Free Water. The group has attempted to establish expertise and credibility, in an area of research and advocacy to which Edwards has devoted more than a quarter century of his life, and for which he has received international recognition.

28.     On August 21, 2016, the New York Times published a profile article regarding Edwards. Defendants Mays, Lambrinidou, and Schwartz all made negative and harmful statements regarding Edwards to the reporter that were included in the article. The article did not disclose that these three individuals had a relationship as founding members of the Campaign for Lead Free Water.

29.     During 2017, upon information and belief, Defendants Mays, Lambrinidou, and Schwartz entered into an ongoing civil conspiracy to attack and damage Edwards' professional reputation. By and through this conspiracy, as well as acting individually, each Defendant, as described below, used improper methods to intentionally and maliciously harm Edwards.

30.     Since mid-2017, Edwards has been subjected to numerous negative written and verbal false statements, made by Defendants, acting individually and in concert, via Facebook posts, Twitter tweets, television interview, radio interviews, emails, correspondence, and other public fora. Said false statements have in fact harmed Edwards.

31.     In short, the defendants have been engaged in a concerted smear campaign directed at Edwards, since at least August of 2016, and since that time have repeatedly demonized Edwards and his work to the public at large as well as specific individuals and subsets within Edwards' professional community.

32.     By way of example, on May 11, 2017, Schwartz falsely and harmfully stated via a Facebook post:

> He [Edwards] has no knowledge of the social sciences, little connection to either of our communities, a disdain for people of color, low income folks, is a follower of Rush Limbaugh and Ayn Rand, who wrote the callow and disdainful libertarian bible, "Atlas Shrugged." . . . .
>
> I am appalled at how he has not completely released Flint's data, tried to convince the world that the shigella outbreak was due to Flint residents not showering or bathing (which was shown not to be

8

true in a paper produced by the MI Department of Health and Human Services) and has belittled and made personal attacks on residents in Flint who are asking perfectly reasonable questions about health issue that they want answers to.

Instead of employing the scientific method to dig into these questions, Dr. Edwards has used ad hominem attacks and now Breitbart like tactics to smear and intimidate people. This is beyond the pale, unethical and not scientific.

His intervention is celebrated at Virginia Teach where they talk of his work and that of the Lab and the Flint Water Study as "being the eyes and ears of Flint" -- how condescending can one get? They have also talked about how Marc has figured out how to turn "lead into gold," meaning that his work has gotten him a $500,000 genius grant from the MacArthur Foundation and tons of money from government sources.

Last but not least Dr. Edwards has constructed a false narrative that claims that he found out about the lead in water problem in DC and Flint when in fact it was residents who made the connection first.

We have laid the table for him to come into our communities and to 'pimp' the disaster for personal and professional gain while he compounds our suffering by trotting us out when it is convenient for him and fits his "hero" and "rescue" story line.

Yes the science and technical issues are complex. The fact that the media, governments, the medical establishment and academics would only really listen to to our problems when someone with letters behind their name put them out there is highly problematic.

This behavior silences and erases the people who are suffering from the multiple contaminants and is part of a long history of colonial and ...imperial science and engineering interventions in our communities.

We must acknowledge the harm and call out the injustice that these type of interventions cause. . . .

Paul Schwartz Campaign for Lead Free Water,
Organizing Committee
(202) 279-0438"

33.     On May 31, 2017, Schwartz falsely and harmfully published, an email

purportedly responding to Edwards, that was sent to listserves: Campaign for Lead Free Water

9

<leadfreewater@googlegroups.com>; righttowatercoalition@salsa3-lists.salsalabs.com, as well as to the President of Virginia Tech (president@vt.edu), which included the following statements:

> ### Ethical Considerations: Virginia Tech, DC and Flint -- An email response to Marc Edwards
>
> There have been times you have stepped beyond your competence and expertise, beyond the bounds of decency and into a space where you have used ad hominem arguments, belittled ordinary folks for asking important questions about their health or for having the temerity to disagree with you, while you arrogated power and credit for yourself and your chosen band that rightly belonged to the people. . . . Anyone who dares question the social interpretations you derive from data, political analysis, policy pronouncements, intervention in communities, or gender, race, and professional gains and privilege; and anyone who dares question how all of these things are embodied in your interactions with low-income people of color and women, is derided, lied about, intimidated, threatened, and bullied, it seems in an attempt by you to scare, erase, and silence them.
>
> Really, I think what we are facing is a very old asymmetric power dynamic, with you as a lettered, white, male engineer at the top of a professional hierarchy that is fully backed by your powerful institution (Virginia Tech) and a self-serving science establishment craving for validation and elevation, and with front line groups at the bottom of the totem pole, lacking the resources and protection to articulate disturbing truths that might turn you against them. Your intervention smacks of the same colonial and imperial approach used by the first-world elites to get and maintain power in the global south.  It has always been argued, as you too profess, and I concur, that:
> * Ethical shortcuts;
> * Patronizing tactics (such as your own claim of being the "eyes and ears" of the people);
> * Unsubstantiated and humiliating charges about affected communities (such as your own theory that Flint residents caused a bacterial outbreak out of blanket mistrust of science – meaning, really, of your science and your interpretations of this science – lack of hygiene, gullibility, and overall ignorance, even about their own bodily experiences);
> are highly problematic and non-scientific behaviors that are unacceptable and must be called out.
>     . . . .
> It is also interesting that you are working on the DC lead in water in schools issue now, without even bothering to check with District residents who have been doing the hard ground work of analyzing the schools' data,

10

holding accountable recalcitrant local agencies, testifying at hearings, and organizing to demand sound policy and implementation. As you well know, we have spent years working in our community to address these issues, yet you don't have the decency to seek our permission to assist us, understand our work, our policy concerns and knowledge, and may in fact undermine the outcomes we are seeking in OUR hometown. To date, DC's bill is the most science based and health protective bill in the country, and that's because of our dogged efforts on the ground. What do you think you are doing consulting with the agencies that have betrayed our children again and again without first consulting with us?

....

Apparently you have done this because you are upset at my calling you out for your unethical and bullying behavior and your denigration of the people of Flint.

....

you are incapable of listening constructively to and learning from differing views or even cries and protests about the effects of your work on communities in crisis. Your record does indeed speak for itself. I agree. When one looks, one quickly sees that your one and only response to anyone questioning you is to attack them, demean them, gaslight them, and/or invite them for a fight.

34.     In 2016, Mays took improper water samples using a Virginia Tech lead test kit, then publicly asserted in the media, that the test, which she had manipulated, demonstrated dangerous levels of lead in her water. After she admitted to violating the test protocol in person to Edwards, and made a recorded public presentation also acknowledging her failure to collect a proper sample according to the written instructions provided by Virginia Tech, Edwards provided evidence of Mays falsified results to the U.S. Environmental Protection Agency.

35.     On September 9, 2017, Mays stated via Twitter, "The person [Edwards] being talked about betrayed my family.  He promised he would fight for us and when he was co-opted by the State, he abandoned us."

36.     In late 2017, Lambrinidou made two keynote presentations that, based on information and belief, included false and harmful statements of and concerning Edwards. Attendees live tweeted that an engineer engaged in D.C. and Flint [Edwards] was engaged in

"structural bullying" and compared Edwards' conduct to sexual harassment and assault victims in the #metoo movement.

37.     On February, 27, 2018, Mays made the following false and harmful statements of and concerning Edwards during an interview on CAN TV, an online program available now on YouTube:

> "As for the filters….also…Wayne state has been trying to get this study out for a year.  The state of Michigan has blocked it……as well as some other PhDs (I am not bitter).  The tap filters grown bacteria. …..Boil the water.  We had to find that the hard way because the filters cause Dysentery (shigella)….
>
> "From 2014 Hundreds of people in Flint died from pneumonia. Probably undiagnosed legionairres disease. They are willing to kill people. Why are they killing us off because who will pay the bills? Because they want the land."

38.     In May 2018, the Defendants, acting individually and in concert, published a letter that included numerous false and harmful statements ("**EXHIBIT 1**") ("the letter").  On May 10, 2018, the letter was published to numerous recipients, including Plaintiff's employer, the general public, numerous organizations in Plaintiff's professional field, and others.  The letter was published by numerous means, via email, social media, hand delivery, and other means.

39.     The letter was published as an attachment to an Email sent to Virginia Tech President Timothy Sands; the text of said email stated:

> "Esteemed President Sands,
>
> "Residents of Flint request you tell us where we can file a formal complaint against the behavior, since January 2016, of Professor Marc Edwards of Virginia Tech. We also request that you send representatives to Flint as soon as possible for a meeting with us to hear directly from us about our experiences with Mr. Edwards and our call for an investigation into Mr. Edwards' conduct and the harm his actions have caused.
>
> "Attached is our full complaint. Thank you for your time and immediate attention on this matter.

"-Affected Residents of Flint, Michigan-"

The email also explicitly referred to and incorporated the attached defamatory letter.

40.    The letter was also, on that date or thereafter, emailed and/or tweeted via Twitter

to the following recipients:

      a. President of Virginia Tech - @VTSandsman
      b. AAAS - @aaas
      c. Rush Holt - @RushHolt (head of AAAS)
      d. Union of Concerned Scientists - @UCSUSA
      e. @AARosenbergUCS
      f. AEESP - @AEESProfs
      g. Linda Weavers - @weavers_l (current president of AEESP)
      h. Maya Trotz – @matrotz (president elect of AEESP)
      i. National Academy of Engineering - @theNAEng
      j. C.D. Mote, Jr – email: dmote@nae.edu (president of NAE)
      k. National Academy of Sciences - @theNASciences
      l. Marcia McNutt - @Marcia4Science (president of NAS)
      m. National Science Foundation - @NSF_ENG
      n. Dawn M. Tilbury - email: dmtilbur@nsf.gov (assistant director of engineering)
      o. MIT media lab - @medialab
      p. Joi Ito - @Joi (director of MIT Media Lab)
      q. President of Virginia Tech - @VTSandsman

41.    The letter was addressed "To the Scientific and Engineering Communities" and

included the following false and harmful statements that were made of and concerning Edwards:

      a. "We also request that you send representatives to Flint as soon as possible for a meeting with us to hear directly from us about our experiences with Mr. Edwards and our **call for an investigation into Mr. Edwards' conduct and the harm his actions have caused.**"

      b. "Mr. Edwards' **portrayal of Flint residents as dumb, dirty and vulnerable** to being misled by anyone other than himself started in early 2016, is ongoing, and is misguided and offensive, because...."

      c. "Contrary to Mr. Edwards' claims, Flint residents were never told that shigella was in our tap water and, as a whole, never stopped using proper hygiene from fear of the water. The allegation that FACHEP announced that they found shigella in Flint water **is a lie.** The allegation that WE

13

caused our own shigella outbreak because we stopped bathing out of fear of the water, **is also a lie.**"

d.  What scares us is Mr. Edwards who **uses his position as a scientist to misrepresent us and silence us.**"

e.  "In May 2016, Mr. Edwards erroneously accused Scott Smith and Water Defense of scaring residents out of bathing …. Mr. Edwards also accused Dr. Laura Sullivan and Mr. McElmurry of FACHEP of causing Flint residents to stop bathing because their research scared us (according to some reports, **Mr. Edwards made the preposterous claim that as many as 80% of us returned to a state of filth). This is insulting and false. It is also blatantly unscientific** because Mr. Edwards did not bother to ask actual Flint residents about our bathing habits **before coming up with this pronouncement.**"

f.  "To our knowledge, **there is no one in the scientific community overseeing Mr. Edwards' work or the way he uses his power over powerless residents.** As far as we know **there is no one in the scientific community ensuring the integrity and honesty of Mr. Edwards' words, research and activism.** Mr. Edwards has **repeatedly spoken and written about how there are no bacteria or dangerous pathogens in Flint residents' water,** even though he is not a microbiologist nor is he doing mass testing within our homes.  Also, Mr. Edwards has **assured Flint residents that it is safe to bathe in unfiltered water even though he has not done widespread testing of hot shower water and he is not a physician, dermatologist or toxicologist.** However, when Flint residents reached out to microbiologists, physicians, dermatologists and toxicologists for answers, they too were **the aim of absurd social media attacks by Mr. Edwards.**"

g.  "Instead, **Mr. Edwards goes around the country giving talks that dismiss our concerns and calls us 'tribal'** …. Shockingly, **Mr. Edwards has gone as far as to declare that the Flint Water Crisis was over 2 years ago** (in 2016). We believe it would be best that Mr. Edwards now leaves our town alone. We need an end to his disruptive presence so that we can finally clean up the mess he has left behind him, focus on healing the rifts he has created between residents, and try to address the real problems plaguing us. Mr. Edwards' choice to initiate drama distracts from the real suffering in Flint and needs to stop NOW."

h.  "We are reaching out to you, key representatives of the scientific and engineering communities who keep awarding and rewarding Mr. Edwards for his behavior, because **we need full protection from Mr. Edwards immediately.** We also **need an immediate investigation** that puts OUR voices at the center and demands evidence for all claims made by Mr.

14

> Edwards. **We ask for a committee that includes academics, professionals, and Environmental Justice leaders who have expertise in abuses of professional power against poisoned communities like Flint."**

*See* **Exhibit 1** (emphasis added).

42.     The Defendants, individually and acting in concert, created a web page (www.Flintcomplaints.com) and a Facebook page to host, draw attention to, and facilitate the republishing of this letter. Provision was made for non-Flint residents to sign the letter. Schwartz and Lambrinidou signed as representatives of the Campaign for Lead Free Water. Located at https://www.facebook.com/FlintComplaint/posts/1299919460150123, the Facebook page has also been used by Defendants to publish numerous defamatory statements of and concerning Edwards, including:

   a.  "On May 10, Flint residents sent a letter out to the heads of the Scientific and Engineering Communities and Academia asking for an independent committee to come to Flint and hear our stories firsthand of the attacks and intimidation by a certain researcher [Edwards]."

   b.  "the social media, public attacks and intimidation by this researcher [Edwards] have not stopped and now his students have copied this behavior in a presentation just last week"

   c.  "[Edwards] began another barrage of false accusations to her personally, which is abhorrent behavior for a Professor"

43.     On May 31th 2018, a researcher from Edwards' research group made a scheduled presentation at a professional conference in Maryland. Schwartz attended the presentation, took the microphone at the beginning of the question and answer period, and identified himself as a representative of the Campaign for Lead Free Water. After referencing the defamatory letter, and ignoring audience requests that he stop disrupting the proceedings, he continued to do so for several minutes. Schwartz handed out copies of the letter to conference attendees. A copy of the letter states in handwritten words "Paul's Copy" in the upper right corner.

44.     Each of the Defendants, upon information and belief, collaborated, worked on, shared ideas, encouraged one another, contributed to and generally acted in concert to draft the contents of the letter.

45.     Publicly available metadata from the Microsoft WORD document of the defamatory letter distributed to the organizations, indicates the letter was saved on and distributed from Defendant Melissa Mays' computer (the letter may have also been saved on and distributed from other defendants' computers).

46.     Following the initial publication of the letter, upon information and belief, each Defendant, at various times and by various means, re-published the letter to various audiences and members of the public, including colleagues and other members of Plaintiff's professional community and field.

47.     Following publication of the letter, the defendants continue to make defamatory statements regarding Edwards via social media, electronic communication, and verbal statements as part of an ongoing disparagement campaign.

48.     On June 27-28, 2018, Defendants Mays, Lambrinidou, and Schwartz directed and sent false and harmful statements via social media posts to the W.K. Kellogg Foundation, the Engagement Scholarship Consortium, and the Association of Public and Land Grants University, that included but were not limited to republication of the defamatory letter quoted above, and affirmatively discouraged these professional organizations and foundations from awarding Edwards' team at Virginia Tech awards or any other positive recognition.

49.     On June 30, 2018, Melissa Mays published defamatory statements of and concerning Edwards via Facebook and Twitter, associated with a photograph of a water hydrant spewing discolored water that defendants stated had been taken days earlier. The photo and

accompanying statements about "experts" who claimed that Flint water was now "normal" was widely shared. After Edwards team demonstrated that the viral photograph was not taken a few days early, but was actually from 2015 during the height of the water crisis, Mays' stated "Here is yet ANOTHER example of Virginia Tech's Marc Edwards and @flintwaterstudy taking it upon themselves to attack poisoned Flint residents and call them liars;" "It's just appalling that professionals 'investigate' and attack residents, not the people who poisoned us." Mays had previously asserted that this photo illustrated "legal genocide" of Flint residents.

50.     Defendants' statements and the implications arising from Defendants' statements, quoted herein, are false and harmful to Edwards' reputation; to wit, the statements entailed either direct or implied untrue statements of fact that proximately caused harm to Edwards' reputation.

51.     Defendants' statements quoted throughout this Complaint contain false implications of fact damaging to Edwards' reputation, including but not limited to the implication that Edwards has engaged in inappropriate and/or illegal conduct sufficient to provide the basis for a formal complaint and initiate an investigation.

52.     The defamatory statements, made by each of the defendants, were made with actual (constitutional) malice as well as spite or ill will (common law malice). The statements were made with actual knowledge of falsity or reckless disregard for the truth. The defendants were motivated to make the malicious statements because, *inter alia*, they harbor personal animosity toward Edwards.

53.     The publication and/or republication of defendants' statements proximately caused general compensatory damages, including but not limited to damages to Edwards' business reputation, professional reputation, and personal reputation; as well as special damages by diminishing Edwards' ability to procure grant funding; stunting his career development;

17

negatively affecting his eligibility for professional awards and commendations; permanently diminishing Edwards' potential earning capacity; and causing Edwards and his family severe emotional distress.

**COUNT I**
**Defamation *per se***

54.     The Plaintiff herein incorporates by reference into this count all of the allegations appearing elsewhere in this Complaint.

55.     The statements alleged both explicitly and implicitly defamed the Plaintiff and, taken as a whole, are libelous *per se*, because they impute unfitness to perform duties of office and employment for profit and want of integrity in the discharge of those duties. The statement prejudices Plaintiff in his profession, tending to injure him in his employment and profession.

56.     The statements were made by Defendants to persons, including members of the general public, who had no interest in the subject matter of the statements.

57.     The Defendants lacked reasonable grounds for making or publishing the statements, implications, and insinuations complained of, and acted negligently in publishing the statement.

58.     When the Defendants published the defamatory statements, they knew the statements would be heard and read by members of the general public. By publishing the defamatory statements alleged herein, the Defendants intended to, and did, cause the Plaintiff to be subjected to public ridicule and contempt. The defamatory statements permanently stigmatized the Plaintiff.

59.     The Defendants acted with common law malice (ill will, spite, contempt, jealously, and resentment).

60.    The Defendants acted with actual malice (knowledge of falsity or reckless disregard of the truth).

61.    As a proximate cause of publication of the defamatory statements, the Plaintiff has been damaged.

### COUNT II
### Defamation

62.    The Plaintiff herein incorporates by reference into this count all of the allegations appearing elsewhere in this Complaint.

63.    The statements referred to herein have caused, are causing, and will cause the Plaintiff injury to his reputation, good name, and have held, and will hold, him up to public scandal and/or ridicule, and have caused, are causing, and will cause him embarrassment, humiliation and mental suffering.  The statements were calculated to, and do, hold Plaintiff up to public sworn hatred, hatred, and ridicule; by such publication the Defendant did injure the Plaintiff's reputation in the community at large.  The Plaintiff has been injured in reputation and good standing in the community in which the Plaintiff lives.

64.    The Defendants acted with common law malice (ill will, spite, contempt, jealously, and resentment).

65.    The Defendants acted with actual malice (knowledge of falsity or reckless disregard of the truth).

66.    As a proximate cause of publication of the defamatory statements, the Plaintiff has been damaged.

### COUNT III
### Tortious Interference with Contract Expectancy,
### Business Relationship and Economic Advantage

67.    The Plaintiff herein incorporates into this Count all of the allegations appearing

19

elsewhere in this Complaint.

68.     Throughout 2016-2018 and at all times alleged herein, the Plaintiff has enjoyed contract expectancies, business relationships, and economic advantages with Virginia Tech, as well as with various academic funding sources, arising from his work as a scientist, professor, and public servant.

69.     Throughout 2016-2018 and at all times alleged herein, there was a reasonable probability of future economic benefit to Plaintiff from those contract expectancies, business relationships, and economic advantages.  All defendants knew of those contract expectancies, business relationships, and economic advantages.

70.     The defendants used improper methods to interfere with said contract expectancies, business relationships, and economic advantages in the manner alleged throughout this complaint.

71.     The Defendants intended to interfere with the contract expectancies, business relationships, and economic advantages alleged herein.

72.     It was reasonably certain that the contract expectancies, business relationships, and economic advantages alleged herein would have been realized in the absence of the Defendants' conduct.

73.     The Defendants' interference with the contract expectancies, business relationships, and economic advantages alleged herein proximately caused Plaintiff to suffer future lost earnings as well as permanently diminishing potential earning capacity.

## COUNT IV
## Common Law Civil Conspiracy

74.     The Plaintiff herein incorporates into this Count all of the allegations appearing elsewhere in this Complaint.

75.     The Defendants acted in combination of two or more persons.

76.     The Defendants intended to accomplish and did accomplish, through concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means.

77.     Defendants' acts committed in furtherance of the conspiracy proximately caused damages to the Plaintiff.

## COUNT V
### Statutory Civil Conspiracy – Virginia Code §§ 182-499 et seq.

78.     The plaintiff herein incorporates into this Count all of the allegations appearing elsewhere in this Complaint.

79.     The Defendants acted in combination of two or more persons for the purpose of willfully or maliciously injuring the Plaintiff in reputation, trade, business, or profession; and acted with unlawful and tortious purpose and acts and/or improper methods.

80.     Defendants' acts committed in furtherance of the conspiracy proximately caused damages to the Plaintiff and Defendants are thereby liable to the Plaintiff, pursuant to Virginia Code §§ 182-499 et seq., for treble damages and attorney's fees.

### Prayer for Relief

WHEREFORE, Plaintiff, Marc Edwards, moves this Court to enter judgment for him against the Defendants, Paul Schwartz, Yanna Lambrinidou, and Melissa Mays, jointly and severally, in the amount of THREE MILLION DOLLARS ($3,000,000.00) as compensatory damages, plus pre-judgment and post-judgment interest at the maximum rate(s) allowed by law on the entire judgment from the date of May 10, 2018 until paid.

**Plaintiff Demands Trial by Jury.**

Respectfully submitted,

MARC EDWARDS

By: _____
        Of Counsel

Jeremiah A. Denton III, Esq.
VSB #19191
Jeremiah A. Denton IV, Esq.
VSB #83818
JEREMIAH A. DENTON III, P.C.
3300 South Building, Suite 208
397 Little Neck Road
Virginia Beach, VA 23452-7356
Tel: 757/340-3232
Fax: 757/340-4505
jerry@jeremiahdenton.com
jake@jeremiahdenton.com

AAAS - @aaas                                                    May 10, 2018
Rush Holt - @RushHolt (head of AAAS)
Union of Concerned Scientists - @UCSUSA
@AARosenbergUCS
AEESP - @AEESProfs
Linda Weavers – @weavers_l (current president of AEESP)
Maya Trotz – @matrotz (president elect of AEESP)
National Academy of Engineering - @theNAEng
C.D. Mote, Jr – email: dmote@nae.edu (president of NAE)
National Academy of Sciences - @theNASciences
Marcia McNutt - @Marcia4Science (president of NAS)
National Science Foundation - @NSF_ENG
Dawn M. Tilbury - email: dmtilbur@nsf.gov (assistant director of engineering)
MIT media lab - @medialab
Joi Ito - @Joi (director of MIT Media Lab)
President of Virginia Tech - @VTSandsman

To the Scientific and Engineering Communities

Residents of Flint request you tell us where we can file a formal complaint against the behavior, since
January 2016, of Professor Marc Edwards of Virginia Tech. We also request that you send
representatives to Flint as soon as possible for a meeting with us to hear directly from us about our
experiences with Mr. Edwards and our call for an investigation into Mr. Edwards' conduct and the harm
his actions have caused.

We highlight some of our concerns below:

1. Violation of Principle #3 of the Jemez Principles for Democratic Organizing: "Let People Speak for
Themselves" (https://www.ejnet.org/ej/jemez.pdf): In March 2018, Mr. Edwards filed a formal
complaint against Professor Shawn McElmurry and FACHEP (Flint Area Community Health and
Environment Partnership). This complaint does nothing to help the residents of Flint move toward
recovery in the Water Crisis. In fact, it has caused more strife, stress and drama that we do not need,
want or deserve. Amazingly, Mr. Edwards presented his grievances against Mr. McElmurry as being the
grievances of Michigan residents (see his March 29, 2018 blog post "The Flint Area Community Health
and Environment Partnership (FACHEP) vs. The People of the State of Michigan"). Mr. Edwards did this
without speaking to us first or securing our permission to take this action on our behalf. Also, Michigan
residents never asked Mr. Edwards to file this complaint on our behalf, nor do we as a "group" support
it, so the complaint should be titled "Marc Edwards vs. Whomever He Chooses" (and if there are any
Michigan residents who support Mr. Edwards in his complaint, Mr. Edwards should list them all by
name). Michigan and Flint residents have their own voice and have never asked Mr. Edwards to speak
for us, let alone take official action using our names instead of his own.

It should be obvious by now to anyone paying attention that Mr. Edwards' claims that he represents
"the people of Flint" or works "with Flint residents" are hollow. Those who haven't figured this out yet
should ask themselves why it is that Mr. Edwards' only evidence of working with "the residents" is a
tired show of the same group of 2-3 individuals who are embedded with Mr. Edwards and loyal to him.
The reality is that the majority of Flint residents who initially brought Mr. Edwards into Flint and worked
with him now have distanced themselves from him. Many of these residents feel that Mr. Edwards'



EXHIBIT
tabbies
1

drama, changes in stance, and attacks on residents and researchers have ended up taking Flint residents' voice away and giving it to Mr. Edwards. This has allowed Mr. Edwards to make Flint's Water Crisis about himself and not the people.

Media report about Edwards' complaint:
https://www.detroitnews.com/story/news/local/michigan/2018/03/30/edwards-mcelmurry-filing-falsified-research/33414501/

Edwards' March 29, 2018 blog post (along with many other outlandish blog posts that bear zero resemblance to professionalism or assistance to Flint residents):
http://flintwaterstudy.org/2018/03/fachep-vs-the-people-of-the-state-of-michigan-part-i-dr-shawn-mcelmurry/

2. Obstruction of Flint's right for self-determination: Residents of Flint object to Mr. Edwards fighting his own petty and vicious fights against anyone and everyone he sees as a challenger or competitor, and against anyone and everyone Flint residents turn to for help other than himself, all under the guise of "protecting" and "saving" us, or "defending" science. This is dishonest, paternalistic and exploitative and, we fear, used by Mr. Edwards to build his own professional and financial power. It also violates the most basic right that we have for self-determination. The allegations listed in Mr. Edwards' latest complaint against Mr. McElmurry are eerily similar to previous attacks by Mr. Edwards on affected Flint residents, journalists, attorneys, as well as other researchers and groups that may not share Mr. Edwards' opinion about the Flint Water Crisis recovery stage. Far too many residents in Flint are exhausted from Mr. Edwards' bullying, his claims to be the "humanitarian" who so "cares" for the people, and his Hollywood antics -- this is not Entertainment Tonight. The sensational title of Mr. Edwards' March 29, 2018 blog post alone suggests that Mr. Edwards is using our crisis and suffering for entertainment, intrigue, exhibitionism, and personal power that might attract the media and outside readers but are completely inappropriate for the circumstances. Many residents now fear the possibility that Mr. Edwards' glib, reckless, and egotistical conduct may hamper the ongoing criminal investigation into the Legionnaires deaths in our city, which we see as the only form of justice we might achieve (http://michiganradio.org/post/scientific-disagreements-could-affect-special-prosecutor-s-case-flint-water-crisis.) This additional and totally undeserved worry suddenly adds to the stress and chaos we already feel.

3. Unsubstantiated defamation of Flint residents: Mr. Edwards' portrayal of Flint residents as dumb, dirty and vulnerable to being misled by anyone other than himself started in early 2016, is ongoing, and is misguided and offensive, because:

a) WE, Flint residents, are the ones who discovered our water's contamination months before we brought Mr. Edwards in our city. Also, despite Mr. Edwards' claim to the contrary, WE are the ones who have always led and continue to lead the activism on the ground. In reality, Mr. Edwards' work wouldn't be possible without US.

b) Contrary to Mr. Edwards' claims, Flint residents were never told that shigella was in our tap water and, as a whole, never stopped using proper hygiene from fear of the water. The allegation that FACHEP announced that they found shigella in Flint water is a lie. The allegation that WE caused our own shigella outbreak because we stopped bathing out of fear of the water, is also a lie. The CDC showed, and presented to Flint residents, that the shigella outbreak was NOT due to residents not bathing. But Mr. Edwards never retracted his false statements. We (of course) bathe, which is why we have been saying

that the problems with our water are not over. It is BECAUSE we bathe that we experience rashes, breathing problems in the shower and more. Contrary to Mr. Edwards' claims, we WANT science that addresses our questions, experiences and needs. Science has NEVER scared us. What scares us is Mr. Edwards who uses his position as a scientist to misrepresent us and silence us.

c) In May 2016, Mr. Edwards erroneously accused Scott Smith and Water Defense of scaring residents out of bathing (https://www.theguardian.com/us-news/2016/may/31/flint-lead-tainted-water-crisis-michigan-safe-to-use). Now, in March 2018, while testifying for the State of Michigan in defense of Dr. Eden Wells and Nick Lyon, both charged with involuntary manslaughter for hiding the deadly Legionnaire's outbreak in Flint, Mr. Edwards also accused Dr. Laura Sullivan and Mr. McElmurry of FACHEP of causing Flint residents to stop bathing because their research scared us (according to some reports, Mr. Edwards made the preposterous claim that as many as 80% of us returned to a state of filth). This is insulting and false. It is also blatantly unscientific because Mr. Edwards did not bother to ask actual Flint residents about our bathing habits before coming up with this pronouncement. As residents of Flint, who must have up-to-date information in order to make informed decisions about our health, we believe that we are entitled IN REAL TIME to ALL relevant findings that scientific research produces, even if those findings involve uncertainties, and we appreciate FACHEP for alerting us to the fact that filters can increase the growth of bacteria if sitting unused for a long period of time. We also appreciate the work that other researchers have done to help answer our questions and communicate more meaningfully with our doctors.

4. To our knowledge, there is no one in the scientific community overseeing Mr. Edwards' work or the way he uses his power over powerless residents. As far as we know there is no one in the scientific community ensuring the integrity and honesty of Mr. Edwards' words, research and activism. Mr. Edwards has repeatedly spoken and written about how there are no bacteria or dangerous pathogens in Flint residents' water, even though he is not a microbiologist nor is he doing mass testing within our homes. Also, Mr. Edwards has assured Flint residents that it is safe to bathe in unfiltered water even though he has not done widespread testing of hot shower water and he is not a physician, dermatologist or toxicologist. However, when Flint residents reached out to microbiologists, physicians, dermatologists and toxicologists for answers, they too were the aim of absurd social media attacks by Mr. Edwards.

Ultimately, Mr. Edwards' focus, and the focus of any specialist claiming to "save" us, should be on our LIVES, our first-hand EXPERIENCES, our NEEDS, and on the fact that we are still suffering. Instead, Mr. Edwards goes around the country giving talks that dismiss our concerns and calls us "tribal" (https://www.swarthmore.edu/news-events/listen-engineer-marc-edwards-truth-seeking-age-tribalism, https://nicholas.duke.edu/about/events/truth-seeking-age-tribalism-lessons-flint-water-crisis-marc-edwards). Shockingly, Mr. Edwards has gone as far as to declare that the Flint Water Crisis was over 2 years ago (in 2016). We believe it would be best that Mr. Edwards now leaves our town alone. We need an end to his disruptive presence so that we can finally clean up the mess he has left behind him, focus on healing the rifts he has created between residents, and try to address the real problems plaguing us. Mr. Edwards' choice to initiate drama distracts from the real suffering in Flint and needs to stop NOW.

We are reaching out to you, key representatives of the scientific and engineering communities who keep awarding and rewarding Mr. Edwards for his behavior, because we need full protection from Mr. Edwards immediately. We also need an immediate investigation that puts OUR voices at the center and demands evidence for all claims made by Mr. Edwards. We ask for a committee that includes academics, professionals, and Environmental Justice leaders who have expertise in abuses of professional power against poisoned communities like Flint.

We thank you for your time and are looking forward to a prompt response.

Please contact FlintComplaint@gmail.com

Sincerely,

Amie Dinnan, Flint Resident
Bethany Hazard, Flint Resident
Bobbi J. Coates, J.D., Flint Resident
Brittany Fletcher, Flint Resident
Butch Siebecker, Flint Resident
Chris Thornton, Flint Resident
Clarissa Camez, Flint Resident
Coby L. Yaklin, Flint Resident
Corbin Donovan, Flint Resident
Dale Mata, Flint Worker
Danielle Montpas, Flint Resident
Diane Soracco, Flint Resident
Eric Brow, Flint Resident
Haley Renae, Flint Resident
Jackie Barnes & Arrow, Flint Resident
Jamis Crawford, Flint Resident
Jill Robison, Flint Resident
Juann Marshall, Flint Resident
Kinea S. Wright, Flint Resident
Lori Lacko, Flint Resident
Marla Garland, Flint Resident
Martha Dellinger, Flint Parent
Melissa Mays, Water You Fighting For, Flint Resident
Michael Mays, Water You Fighting For, Flint Resident
Michele Siebecker, Flint Resident
Nakiya Wakes, Flint Resident
Qiana Towns, Flint Resident
Rhonda Kelso, Flint Resident
Robert L. Johnson, Flint Resident
Robert W Cranmer, Flint Resident
Rochelle Kelley, Flint Resident
Ronda Thornton, Flint Resident
Rozeita Thomas, Flint Resident
Sabrina Donovan, Flint Resident
Sherri J. Cross, Flint Resident
Tabitha Fenn, Education Watchdogs, Flint Resident
The Reverend Dan Scheid, Episcopal Priest, Flint
Tracy Midkiff, Flint Resident
Victoria Marx, Flint Resident

...And more as signatures are collected