**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| Marc Edwards | )   Case Number: 7:18-cv-00378-MFU |
|       *Plaintiff* | ) <br> )   Date: October 1, 2018 |
|       *v.* | ) <br> ) |
| Paul Schwartz, *et. al.* | ) <br> ) |
|       *Defendant*s | ) <br> ) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS BY**
**DEFENDANTS MAYS, SCHWARTZ AND LAMBRINIDOU**

Defendants Melissa Mays, Paul Schwartz, and Yanna Lambrinidou, by and through

undersigned counsel pursuant to Local Civil Rule 11(c), hereby submit this reply brief in support

of Defendants' Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and

12(b)(6). Statements made by or attributed to Defendants in the Amended Complaint constitute

protected opinion or are substantially true bearing citations to the public record with reasonable

interpretations drawn therefrom. Furthermore, Plaintiff fails to adequately plead actual malice, or

even the applicable pleading standard, erroneously citing outdated case law that pre-dates

*Twombly*, *Iqbal* and the Circuits' (including the 4th Circuit) subsequent decisions applying the

"plausibility" standard to this essential element. Further, Plaintiff fails to plausibly plead

personal jurisdiction as is demonstrated not only by Defendants' arguments, but Plaintiff's own

alleged facts, concessions in his opposition papers, and the off-point case from which he quotes a

near two-page excerpt. Finally, Plaintiff makes two invalid objections regarding the exhibits and

footnotes including, but not limited to, Plaintiff's own words in a scholarly article and statements

attributed to him by local and national news outlets. Notably, Plaintiff fails to cite to any case

law for his proposition and, under existing precedent, the documents in question are properly

incorporated by reference, integral to the litigation, and/or capable of judicial notice such that

Plaintiff's two objections to the exhibits and footnotes are invalid.[1]

## OVERVIEW OF THE INSTANT CASE

In his opposition papers, Plaintiff concedes the following: (a) he is a public figure (Doc.

21, at 7, 33); (b) the actual malice standard applies (*Id.* at 33); (c) the case "arises from this

Letter" signed by dozens of Flint residents and academics, including Defendants (*Id.* at 29);[2] (d)

"Defendants' alleged tortious conduct occurred in the context of an ongoing public debate

regarding the well-known water and public health crisis in Flint, Michigan" (*Id.* at 1); (e)

Plaintiff told the press that his case is really about "a battlefield in a war over science" and "if

[he] were to fail in this endeavor [and] not get a penny it would all be worth it because this

cancer has to be exposed and dealt with" (*Id*. at 32); (f) Plaintiff's claims for tortious inference

and civil conspiracy (statutory and civil) are dependent on his causes of action for defamation

(*Id.* at 27-28); (g) courts are able to take judicial notice of or rely on documents referred to in a

complaint when deciding a motion to dismiss (*Id.* at 25-26); (i) that statements alleged in the

Amended Complaint may have been "made without knowledge of falsity" but claims

preposterously that such statements (made by definition without actual malice) should somehow

be construed as "probative evidence of actual malice" (*Id.* at 24-25); and (j) the Amended

---

[1] As for Plaintiff's footnote on Defendants' counsel's use of Twitter to express personal opinions on matters of public concern, Plaintiff's accusations and insinuations (bereft of evidence or context) are outside the scope of the Amended Complaint and serve no proper purpose in this litigation. A reply brief footnote is an inappropriate forum to adjudicate accusations against an opposing attorney. However, as Plaintiff's counsel implies that I threatened violence by referring to a "GIF tweet of a boxer knocking out his opponent," as a point of personal privilege, this clip does not show any boxer getting knocked out. It is an inspirational clip from the Cinderella Man scene of the Lasky fight showing James J. Braddock (Defendants in the metaphor) losing his mouthpiece after taking a blow before smiling at him as the announcer said: "He took his best shot and it didn't even faze him."
[2] He also describes the letter as "the heart" of this case.

Complaint may be "over-inclusive[]" (*Id.* at 25, 32). Based even just on his concessions, Plaintiff's case would fail.

This case is the definition of a strategic lawsuit against public participation bearing an overt concession that all alleged statements occurred in the context of a public debate regarding the Flint water crisis and Plaintiff spelling out to the media that this case is about a "battle" between the sciences and the social sciences, what he claims is a "war" against a "different world view [sic] entirely," and that he expects this Court to declare his worldview superior. Doc. 13-5 and 13-6. While Plaintiff's counsel is right that "Plaintiff has every right to make passionate statements" to the press, he is not entitled to force this Court to decide a vital public health debate halfway across the country under pretense of an injury-free[3] defamation case.

Defendants have already had their First Amendment rights trammeled upon irreparably by being forced to endure the significant legal expense of responding to not one but two complaints which Plaintiff's counsel comes just short of admitting was padded ("over-inclusiveness") and Plaintiff further concedes that the case actually "arises from this Letter" (which bears hyperlinked citations to each statement) as opposed to the roughly 100 other paragraphs of the Amended Complaint. Doc. 21, at 25, 29, 31; Doc. 9; Doc. 9-1.

Further, Plaintiff concedes that alleged statements may have been made "without knowledge of falsity," but claims under the wrong pleading standard – which he knows or should know simply by the year at the end of each case citation showing they were prior to *Twombly* and *Iqbal* – that actual malice was somehow (allegedly) properly and "painstakingly" plead by means of this "over-inclusiveness." *Id.* at 6, 24, 25, 31. It was not. Finally, Plaintiff makes a threadbare assertion that this case falls outside of the scope of Va. Code § 8.01-223.2 (this statute

---

[3] Plaintiff does not allege the loss of even a single contract or grant nor does he allege any sanction by his employer.

does apply to this case) claiming that certain alleged statements do not regard "matters of public concern" in contravention to his concession on the first page of his opposition papers that "Defendants' alleged tortious conduct occurred in the context of an ongoing public debate regarding the well-known water and public health crisis in Flint, Michigan." *Id.* at 1, 33. This case is a cynical attempt to financially bullwhip Defendants into suppression in order to advance Plaintiff's position in a vital public health debate. That is all that this case is, it must be dismissed, and it is subject to an attorney's fees award under Va. Code § 8.01-223.2(B).

## STANDARD OF REVIEW

Plaintiff states the general proposition that on a Motion to Dismiss, the Court treats a complaint's allegations as true and draws all reasonable inferences in Plaintiff's favor, but appears to erroneously argue that this can be used to selectively preclude documents incorporated by reference, by their integral nature to the proceeding, and/or that are capable of judicial notice. Doc. 21, at 2-3. Plaintiff's proposition is in direct contravention to existing case law. When ruling on a motion to dismiss, a court "may consider documents... attached to the motion to dismiss, so long as they are integral to the complaint and authentic" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Case law further contradicts Plaintiff's alternate proposition that the Court cannot consider integral documents, documents incorporated by reference, and/or documents upon which a Court can take judicial notice of when they are negative to Plaintiff's case. Doc. 21, at 3-4. In fact, the rule in the 4th Circuit is that "the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of the complaint." *Goines v. Cmty. Servs. Bd.* 822 F. 159, 165 (4th Cir. 2016); *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (the Court "need not accept as true [Plaintiff's] allegations contradicting documents that are referenced in

the complaint or that are properly subject to judicial notice"); *Bishop v. Lucent Techs., Inc.*, 520

F.3d 516, 519 (6th Cir. 2008) (same); *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (the court

is not obligated to "swallow the plaintiff's invective hook, line, and sinker; bald assertions,

unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited").

## ARGUMENT

This reply brief will argue that: (A) Plaintiff not only failed to plausibly allege actual

malice, but claimed he did not need to by citing to an outdated and overruled pleading standard;

(B) Protected opinion was properly argued in the Motion to Dismiss,[4] was in no way impaired by

Defendants' substantial truth defense, and applies to this case; (C) Plaintiff's claim of defamation

by implication was properly addressed in the Motion to Dismiss and fails; (D) Plaintiff's primary

case comparator is radically off target and demonstrates the invalidity of his case; (E) All

Exhibits and Documents cited to in the Motion to Dismiss are properly before the Court by

reference, due to their integral nature, and/or are capable of judicial notice; (F) Plaintiff's single

alleged instance of a disputed fact is not in the Amended Complaint, is presented improperly for

the first time in this reply brief, and is not material; (G) Va. Code § 8.01-223.2 plainly applies to

this case; and (H) Plaintiff's claim of personal jurisdiction fails under his own case citations.

**A.  Plaintiff Fails to Plausibly Allege Actual Malice and Claims he Did Not Need to.**
*Plaintiff's Standard of Review for Actual Malice is Outdated and Inapplicable*

Plaintiff cites a string of cases from other Circuits, the earliest of which was 16-years ago,

along with two random cases from five years ago in the federal district courts in Nevada and

Arizona, in furtherance of a pleading standard that has been outdated for years. Doc. 21, at 6-7.

---

[4] All references to "Motion to Dismiss" in this document include Doc. 13-1 (technically the Memorandum of Law).

For example, the first case cited *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980) was abrogated in *Oppenheimer & Co. V. Trans Energy, Inc.*, 946 F. Supp. 343, 348, n.4 (S.D.N.Y. 2013) where the court stated that "[i]n Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, it relies on [the] now defunct standard for a motion under Rule 12(b)(6)" in *Geisler* based on analysis of the since overruled *Conley v. Gibson*, 355 U.S. 41, 45 (1957).

Notwithstanding Plaintiff's opening with the now defunct pleading standard of *Conley v. Gibson*, his reply brief concedes that the plausibility pleading standard of *Twombly* and *Iqbal* does apply to defamation cases. Doc. 21, at 7-8. However, Plaintiff then errs in arguing that "states of mind such as actual malice may be averred generally" and that the plausibility standard does not apply to actual malice in the Fourth Circuit. It does apply. *Id.* at 8.

This Circuit stated in no uncertain terms in 2012 that "**malice must still be alleged in accordance with Rule 8** – a "plausible" claim for relief must be articulated." *Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012); *see also Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016) ("[M]alice must be alleged plausibly in accordance with Rule 8" because "Fed R. Civ. P. 9(b)'s language notwithstanding, Fed. R. Civ. P. 8's plausibility standard applies to pleading intent."); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) (after *Iqbal* and *Twombly*, every circuit that has considered the matter applied the *Twombly/Iqbal* standard and "[j]oining the chorus, we hold that the plausibility pleading standard applies to the actual malice standard"); *Pippen v. NBCUniversal Media*, LLC 734 F.3d 610, 614 (7th Cir. 2013) ("plaintiff must still point to details sufficient to render a claim plausible" applying *Iqbal and Twombly's* Rule 8 standard).

The Court in *Mayfield* explained that while Rule 9(b) does state that allegations such as fraud "may be alleged generally," that this phraseology is effectively modified by *Iqbal* which states

that '"generally" is a relative term... Rule 9 merely excuses a party from pleading discriminatory intent under [Rule 9(b)'s] elevated [particularity] pleading standard [but] [i]t **does not give him license to evade** the less rigid – though still operative – **strictures of Rule 8.**" *Id.* at 377 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009) (bolded for emphasis)). The *Mayfield* Court further explains actual malice must be alleged in accordance with the "plausibility" standard. *Id*.

The only scholarly source that has analyzed this issue was in concurrence that '[w]hile Federal Rule of Civil Procedure 9(b) permits malice to be pleaded "generally," all Circuit Courts of Appeals that have addressed the issue have applied the plausibility standard to allegations of malice under Rule 9(b)" and that the result is that this "**gives virtual immunity to defendants who are sued for libel by public figure plaintiffs…**" Judy M. Cornett, *Pleading Actual Malice in Defamation Actions after Twiqbal: A Circuit Survey*, 17 Nev. L.J. 709, 710 (2017)[5]; *see also* Lee E. Berlik, *Rule 8's Plausibility Requirement is Not Modified by Rule 9's "Allege Generally" Provision*, The Virginia Business Litigation Blog [6] ("Rule 9(b)'s general pleading requirement does not create a lesser than Rule 8(a)'s plausibility requirement," rather 'the term "generally" is relative and **must be compared to the particularity requirement of Rule 9(b).**') (bolded for emphasis). Whether this Court accepts that the applicability of the plausibility standard to actual malice "gives virtual immunity to defendants who are sued for libel by public figure plaintiffs," the standard required to plausibly plead a defamation claim is plainly much more stringent than Plaintiff's outdated and inapplicable "averred generally" standard. Plaintiff not only failed to satisfy the Rule 8 standard for actual malice, he argued that he did not need to.

---

[5] https://scholars.law.unlv.edu/cgi/viewcontent.cgi?article=1720&context=nlj
[6] https://www.virginiabusinesslitigationlawyer.com/rule-8s-plausibility-requireme/

***Plaintiff's Alleged Circumstantial Evidence of Actual Malice is Defective***

Nonetheless, Plaintiff further avers that he "painstakingly details facts either directly or circumstantially relevant to the actual malice inquiry in paragraphs 25 through 79" of the Amended Complaint. Doc. 9. In reality, Paragraph 43 directly concedes that Defendants did not have actual malice by making a reference to their state of mind saying: "The Defendants have also expressed animosity toward Edwards **because they appear to <u>believe</u> he represents government interests and does not perform objective testing."** (bolded and underlined for emphasis).[7] *Id.* Similarly, Paragraph 42 alleges common law malice ("severe animosity") based on "differences regarding community activism and other issues surrounding the Flint water crisis." *Id.* Plaintiff argues that merely disagreeing with him on public policy should be treated as "circumstantial evidence probative of actual malice." Doc. 21, at 22-24. That is preposterous.

Paragraph 25 alleges "deceptive tactics regarding the origins and authors of the Letter" despite the fact that Defendants each personally signed the letter. Doc. 9, at ¶55; Doc. 9-1. Paragraph 26-41 cherry-pick email excerpts from eight years ago to allege that Defendant Lambrinidou is unchaste, despite noting in paragraphs 32 and 36 that Lambrinidou and Plaintiff worked together for years without incident after the alleged spurned romantic advances.[8] *Id.* These paragraphs also allege that a dispute arose regarding intellectual property nearly three years ago which does nothing to show knowledge of any alleged falsity. *Id.* Paragraph 43 also makes a threadbare claim that Defendants are jealous of Plaintiff with no basis. *Id.* Paragraphs 44-46 claim various financial or professional reasons to dislike Plaintiff. *Id.* Paragraph 47 claims

---

[7] Plaintiff cites to *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862 (W.D. Va. 2016) in his actual malice argument and notes that this case was not "mentioned in Defendants' memorandum." This case was not addressed in Doc. 13-1 and is not in this brief because it is clearly off-point. In *Eramo*, Defendant was a facially neutral journalist who failed to investigate information from neutral sources as opposed to partisans in a heated public health debate. The differences between the two cases are compounded by Plaintiff's concession in Paragraph 43.

[8] This accusation serves no good-faith legal purpose given that it is based on excerpts of eight-year-old emails and the Amended Complaint acknowledges Plaintiff and Lambrinidou worked together years later without incident.

the start of a conspiracy, "on information and belief," despite having provided several conflicting dates also on "information and belief" in the initial Complaint. *Id.*; Doc. 1.2 at ¶¶ 29-31.

Paragraphs 48-64 include various non-actionable social media postings addressed in the Motion to Dismiss Memorandum (Doc. 13-1) line-by-line and the Letter (Doc. 9-1) signed by several dozen Flint residents and academics that includes hyperlinked citations to each and every statement made. Doc. 9. Paragraph 57 comically alleges that the words "Paul's Copy" written on a printed version of the Letter is some sort of smoking gun where the natural inference is that he wanted to keep a copy for himself. *Id.* Paragraph 59 claims that Defendant Mays (who is a Flint resident) left metadata on the Letter which, if taken in the light most favorable to Plaintiff, would negate Paragraph 25's claim of "deceptive tactics regarding the origins and authors of the Letter" – this isn't a matter of nobody putting their name to the Letter, as Plaintiff's counsel claims, but several dozen people putting their name to the Letter. *Id.*; Doc. 13-1. Paragraph 63 claims as defamation Defendant Mays saying that Marc Edwards and his team (rhetorically) attacked more than one Flint resident and called them liars referencing a blog post where he referred to her (a Flint resident) and Dr. Laura Sullivan (a Flint resident) as "usual suspects" trafficking in "conspiracy theories, misinformation, and fearmongering" while accusing them both of "disrupt[ing] the community, spreading fear, hate and social anarchy" – that is simply a rhetorical attack on more than one Flint resident calling them liars. *Id.* Finally, Paragraph 64 claims as defamation every single statement ever made by any of the Defendants since the beginning of time via Facebook, Twitter, television interviews, radio interviews, emails, correspondence, and other public fora – although *haec verbae* isn't required, there's no time,

context or even any clue as to what is even being alleged in this paragraph such that it is not plausibly plead. *See Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 517 (1991).[9]

In the first forty paragraphs in which Plaintiff claims to have "painstakingly" detailed facts that are alleged to be circumstantially relevant to actual malice we have: (1) Plaintiff expressly conceding the absence of actual malice by saying Defendants "appear to believe" that he represents government interests and does not engage in objective science; (Doc. 9, at ¶43); (2) Plaintiff expressing that this case is brought about by "differences regarding community activism and other issues surrounding the Flint water crisis" (*Id.* at ¶42); (3) Plaintiff painting Defendant Lambrinidou as unchaste based on cherry-picked eight year old emails before disclaiming that this inflammatory assertion is irrelevant by acknowledging that Lambrinidou and Plaintiff worked together for years without incident after the alleged romantic advance (*Id.* at ¶¶28-40); (4) Plaintiff alleging that he and Defendant Lambrinidou had an intellectual property dispute nearly three years ago and worked together for a while thereafter (Id. at ¶¶37-40); (5) Plaintiff alleging that a conspiracy started on one of numerous conflicting dates based on "information and belief" (*Id.* at ¶¶46-47; Doc. 1.2, at ¶¶29-31); and (6) Plaintiff alleging that Defendants had financial or personal reasons to dislike Plaintiff. *Id.* at ¶¶42, 44.

None of Plaintiff's overly inclusive invective (and overt concession that there was no actual malice) do anything to advance his claim that Defendants made the alleged statements with actual malice. The Supreme Court explained that, "the actual malice standard is not satisfied merely through a showing of ill will or malice in the ordinary sense of the term… nor that the defendant published the [allegedly] defamatory material in order to increase its profits." *Harte-Hanks Comm'cns Inc. v. Counnaughton*, 491 U.S. 657, 665-67 (1989).

---

[9] In the penumbra of the rule that a statement is substantially true if the "gist" can "be justified" is that to plausibly plead actual malice one must at least provide the "gist" of the statement so that truth or falsity can be assessed.

Furthermore, the Letter (Doc. 9-1) which Plaintiff states is "the heart" (Doc. 21, at 4) of the Complaint and that the lawsuit "arises from," (*Id.* at 29) provides a direct hyperlinked citation to the basis for each assertion made therein – Plaintiff's only exhibit includes direct and compelling evidence that the alleged statements were not made with actual or constructive knowledge of falsity. Doc. 9-1 Plaintiff wants to be rewarded for his attorney's "over-inclusiveness" of words that do nothing to prove actual malice. It strains credulity that Plaintiff alleges actual malice in a document hyperlinking to source materials for each assertion made, evidence of an attempt to investigate the truth, in a Letter he alleges was written by people he says are "anti-science" (Doc. 13-2, 13-3, 13-5, 13-6) and "living in the dark age" (Doc. 13-2) when by contrast the "failure to investigate" by even a professional journalist has been deemed by the Supreme Court and each Circuit to "not indicate the presence of actual malice." *St. Armant v. Thompson*, 390 U.S. 727, 731 (holding that "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing," but rather that there "must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication"); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) (same); *Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l. Union,* 585 F. Supp. 2d 815, 818 (E.D. Va. 2008) (same). Here, far from alleging that Defendants' "entertained serious doubts as to the truth of [their alleged] publication," Plaintiff concedes that Defendants "appear to believe" what he alleges is the general thrust of the Letter. Doc. 9 at ¶¶10-25, 43.

**Plaintiff's Alleged Direct Evidence of Actual Malice is Defective**

Plaintiff then alleges that in Paragraphs 65-75 he "put Defendants on notice that they were disseminating falsehoods" with this section plastered on top of the content of the initial Complaint. Doc. 21 at 8; Doc. 9. Paragraph 66 effectively claims that Plaintiff's assertion that

Flint residents' lack of bathing was the primary factor leading to their shigella outbreak and his statements during his "tribalism" lecture (such that residents were "anti-science"[10]) led the drafters and signatories of the Letter to express that they felt that he was calling Flint residents "dumb, dirty, and vulnerable." Doc. 9, Doc. 9-1, Doc. 13-3. That is an opinion, with a link in the Letter to his actual speech, about how his words came across to them – they did not put those words in quotes and it was expressed with loose, figurative language. Doc. 9-1, Doc. 13-3.

Further, Plaintiff alleges as defamation and proof of actual malice the attribution to him of statements that he declared that the "Flint water crisis [sic] was over" and that the water was "safe" despite this position being attributed to him in local and national press. Doc. 9, at ¶¶69, 74; Doc. 13-1, at FN 12-17. Plaintiff allegedly "disputes the import Defendants assign to the extrinsic media reports cited throughout their argument," (Doc. 21, at 24) but it simply stands to reason that if national news articles are blaring that Edwards has declared the Flint water crisis over then: (a) Defendants had a good-faith basis for making the statement based on these news reports; and (b) professional journalists interpreted the gist of Plaintiff's statement this way and it strains credulity that individuals Edwards refers to as "anti-science" (Doc. 13-2, 13-3, 13-5, 13-6) and "living in the dark age" (Doc. 13-2) should be held to a higher standard. Without even getting into Plaintiff's own words, this is sufficient to repel a claim of actual malice.

That Plaintiff actually did say that the Flint water crisis ended in 2016 in a co-authored scholarly article capable of judicial notice – the article refers to "Flint water crisis (2014-2016)"[11] only adds insult to injury. Doc. 13-1, at FN18. Plaintiff says that he "reserves the right

---

[10] Technically, Edwards called them "science anarchists" and described the "aftermath of Flint" as "[t]his total science anarchy" which is worse. Defendants do concede that Plaintiff did not use the word "Luddite" in reference to Defendants (he raises this point on Doc. 21, at 24). That phrase is used four times in the Memorandum of Law (Doc. 13-1) because that is synonymous with "science anarchist." One iteration inadvertently had quotation marks.
[11] The natural inference of this statement is that the Flint water crisis ended in 2016. For example, if I wrote William Moran (1953-2016) then I would be indicating that my father was born in 1953 and that his life ended in 2016.

to… debunk[] Defendants' interpretation of extrinsic evidence presented in their memorandum," (Doc. 21, at 5) but this is not "interpretation" – the man simply put his name to a scholarly article that said the Flint water crisis ended in 2016.

Similarly, Plaintiff claims as defamation and proof of actual malice statements allegedly attributing to him the receipt of grant funding from the EPA and Greater Flint Community Foundation despite CNN blaring out the headline "EPA gives $1.9 million to researcher [Marc Edwards] to find lead in water." Doc. 9, at ¶72; Doc. 13-1, at FN 25-26. These articles show that Defendants had a good-faith basis based on news coverage and that professional journalists interpreted the gist in a manner consistent with Defendants. Again, it strains credulity that Defendants, who Plaintiff states are "anti-science" and "liv[e] in the dark age" should be held to a higher standard than a professional journalist. Doc. 13-2, 13-3, 13-5, 13-6. This plainly dispels any notion that Plaintiff plausibly plead actual malice because there exists a basis in the public record for Defendants' alleged statements such that they could not reasonably have actual or constructive knowledge of falsity. Defendants also object to Plaintiff improperly introducing new facts in a reply brief stating: 'Plaintiff notes that Defendants' assertion that '"[Plaintiff] does not personally accept [grant] funding on top of his Virginia Tech salary" is true only with respect to Plaintiff's voluntary pledge regarding work related to Flint… [and] Plaintiff does receive additional income in connection with grant awards' (Doc. 21, at 28) – this is not in the Amended Complaint and its late inclusion prejudices Defendants who could have argued in relation to Paragraph 49 that they had reason to believe that Plaintiff indirectly profited from the Flint water crisis. Plaintiff should not be allowed to treat a reply brief as an Amended Complaint.

Paragraph 73 references as supposed evidence of actual malice, Defendant Schwartz saying "[t]he time for conversation and debate is long past" in response to Plaintiff mocking him

grieving his dead son. Doc. 9; Doc. 13-8. While Plaintiff is entitled to a reading of the facts most favorable to him in a Motion to Dismiss, the emails to which Defendant Schwartz is replying provides necessary context as to what he was actually saying and are both "integral" and incorporated by reference. In a nutshell, Plaintiff is entitled to a reading of the "time for conversation and debate is long past" as a response from a grieving father being mocked over his dead son that is most favorable to Plaintiff. This does not support a finding of actual malice.

Paragraph 75 (Doc. 9) regarding an email to flintcomplaint@gmail.com on May 23, 2018 (Doc. 13-4) where Plaintiff alleges to provide citations and clarifications is actually a laundry list of out of scope rhetorical attacks about Defendant Mays in addition to debate about water safety and shigella on which, as addressed above, the position allegedly attributed to Defendants had a basis in national reporting and joint research data (Doc. 13-1, at FN 4) from the CDC and the Michigan Department of Health and Human Services. Here, Plaintiff conceded that "[Defendants] appear to **believe** he represents government interests and does not perform objective testing" such that Plaintiff allegedly reaching out to Defendants after the publication would not have caused them to entertain serious doubts. Doc. 9, at ¶43.

In the course of 107-paragraphs of "over-inclusiveness," Plaintiff fails to plausibly plead facts in support of the notion that Defendants had actual or constructive knowledge of falsity in any of their alleged statements, but does claim as proof of actual malice such things as a grieving father not wanting to speak with somebody mocking him over his dead son (Doc. 13-8) and positions that were attributed to Plaintiff by the national media based on his press conference. Doc. 13-1, at FN 12-17. Plaintiff asks to be rewarded for "painstakingly" writing many paragraphs that do not plausibly allege knowledge of falsity, for using the words actual malice, and for arguing an inapplicable pleading standard. Plaintiff's claim fails.

**B. Protected Opinion Was Properly Argued and Applies in this Case.**

*Plaintiff Erroneously Argues that Substantial Truth Negates Protected Opinion*

Plaintiff erroneously argues that "[i]n taking the position that the Letter's statements are [substantially] true, Defendants apparently concede that these statements are capable of being proved true or false and therefore actionable statements of fact rather than opinion." Doc. 21, at 5. Defendants do not concede this point and expressly do not waive protected opinion. The doctrines of substantial truth and protected opinion do not negate one another but are instead complimentary. Plaintiff's citation-less argument that protected opinion can somehow be waived by Defendants additionally arguing the substantial truth doctrine would require this Court to overrule the Supreme Court on nothing more than Plaintiff's semantic whims. *New York Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964) ('In cases where that line ["between unconditionally guaranteed speech and that which may be legitimately be regulated"] must be drawn, the rule is that [the Courts] "examine for ourselves the statements in issue and the circumstances under which they were made to see… whether [statements] are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect"') (citation omitted). As simply expressed by one Circuit: "The courts treat the issue of labeling a statement as verifiable fact or as [protected] opinion as one ordinarily decided by judges as a matter of law." *See Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000) citing *Bose Corp v. Consumers Union of United States, Inc*., 466 U.S. 485, 510-11 (1984).

This is intuitive as Plaintiff erroneously conflates the notion of "verifiable fact" with "substantial truth," but the term of art in the context of a Motion to Dismiss stands for the proposition that Plaintiff has not plausibly plead the element of falsity because the "gist" of the statement can "be justified." *Masson,* 501 U.S. at 517. Courts have been very clear on this point

applying both protected opinion and substantial truth to the same statements in case after case. *See, e.g., Brokers' Choice of Am., Inc.*, 861 F.3d at 1137 (holding that statements 9 and 10 in a complaint were both not materially false and were also protected opinion because of the use of "loose, figurative language" in the context of a policy debate); *Cummins v. SunTrust Capital Mkts., Inc.*, 416 Fed. Appx. 101, 102-104 (2nd Cir. 2011) (applying both protected opinion and substantial truth doctrines to 37 alleged defamatory statements referring to a CEO's use of share options as "self-interested, abusive, and unethical"); *Riley v. Harr*, 292 F.3d 282, 291-92 (1st Cir. 2002) (finding assertion that plaintiff was lying in the context of a debate about toxic tort litigation to be protected opinion even where the basis for the opinion was disclosed); *Gardner v. Martino*, 563 F.3d 981, 988 (9th Cir. 2009) (finding assertion that plaintiff was lying made by a hyperbolic radio talk show host was protected opinion even where the alleged factual basis of the opinion was disclosed); *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366-67 (9th Cir. 1995) (statements using "colorful, figurative rhetoric" about plaintiff in the context of a heated scientific debate are protected opinion even where the basis of the opinion was disclosed).

Further, in the Motion to Dismiss, statements regarding verifiable fact versus "substantial truth" are expressly distinguished with Defendants' counsel making 19 references to the substantial truth doctrine while only expressing that something is "true" or "just true" in two select iterations: (a) That Plaintiff expressed that the Flint water crisis ended in 2016 citing to the scholarly article with his name appended to it stating "Flint water crisis (2014-2016)" and (b) that Plaintiff's "shigella curve" theory does not appear to be supported by CDC **data**.[12] Doc. 13-1 at 25, 31. Defendants expressly do not waive the protected opinion argument, and maintain that this protection applies to the Letter (Doc. 9-1) and the other alleged actionable statements.

---

[12] Plaintiff's new claim regarding a CDC report (Doc. 21, at FN 7) is addressed *infra* at Section F.

*Plaintiff Erroneously Claims Protected Opinion Was Not Argued Regarding the Letter*

Plaintiff argues that "Defendants' memorandum discusses opinion doctrine case law, but only applies the opinion doctrine to excerpts of the statements alleged in paragraphs 49 and 50… [n]o attempt is made to apply the opinion doctrine to the remainder of the Amended Complaint's [allegedly] actionable statements." Doc. 21, at 4. This is not true.

Defendants argued and even bolded the text in the Memorandum that this "Court must dismiss the entirety of Plaintiff's claims" comparing them to *Underwager v. Salter*, 22 F.3d 730 (7th Cir. 1994). Doc. 13-1, at 18-19. The Memorandum went on to reference Plaintiff calling himself a "troublemaker," stating that the very same sense of distrust expressed by Defendants and in the Letter were held for "good reason," and that Plaintiff seeks for the Court to 'declare his "world view [sic]" superior in this "new battlefield in the war over science"' which is an express reference to Plaintiff's media comments regarding the Letter. *Id.* at 18.

Plaintiff further argues that "no attempt" was made to apply the opinion doctrine to "the Letter." Doc. 21, at 4. This is not true based on the very pages of the Memorandum he cites to. Doc. 13-1, at 15-19. The entire first paragraph of the Memorandum's section on protected opinion argued in intricate detail why the contents of the Letter were not actionable under this doctrine before delving into applicable case law including that Plaintiff: (a) alleged that Defendants raised concerns in the context of a heated public health debate; (b) acknowledged that he is a "troublemaker"; (c) alleged that Defendants (via the Letter which he attributes to them) claimed he was not listening to Flint residents and was supplanting their voices with his own; (d) alleged that Defendants expressed distrust which Plaintiff said is held for "good reason"; (e) acknowledged that his case is about a "battle" between scientists and social scientists who have a "different world view [sic], entirely"; and (f) disclaimed that he wants the Court to

intercede on his behalf to shut down a public health debate and declare his worldview superior – that is the sum and substance of concerns in the Letter along with Plaintiff's subsequent media response. Doc. 13-1, at 15. **This paragraph even cited to "Amended Compl. Ex. 1" (the Letter) on this point.** *Id.* The very next sentence is directly responsive with a one-page string cite regarding the judiciary's refusal to intervene in or shut down vital public health debates, and instead finding statements in the context of such heated debates to be "protected expression[s] of opinion." *Id. at 16*; *See, e.g.*, Arthur v. Offit, 2010 WL 883745, at *6 (E.D. Va. Mar. 2010) (statement by 'participant in a heated public-health debate [regarding vaccines and autism] stating that his adversary "lies" is not an actionable defamation').

What is true is that Defendants were forced to argue protected opinion generally with a few representative examples (including the Letter) in response to Plaintiff's all but admitted "over-inclusiveness" (Doc. 21, at 25, 32) of 107-paragraphs of plainly non-actionable statements with many of the paragraphs containing numerous hidden independent allegations of defamation within. Due to Plaintiff's "over-inclusiveness," for Defendants to argue in intricate detail how protected opinion applies specifically to each of the several hundred non-actionable (and mostly duplicative) statements in addition to the phantom claims in Paragraph 64 of the Amended Complaint (Doc. 9) about literally every single statement Defendants have ever made via "Facebook, Twitter, television, radio, emails, correspondence and other public fora," would have required a several hundred page treatise. Out of respect for judicial resources and the parties' finances, Defendants did not produce a several hundred-page Memorandum of Law, but instead argued consistent with case law that heated statements by opposing sides in a public health debate – which Plaintiff concedes in his reply brief that the alleged statements were made in the

context of (Doc. 21, at 1) – are protected opinion because the reasonable viewer knows it

represents the subjective views of the speaker and not empirical truth. Doc. 13-1, at 15-19.

### C.  Plaintiff's Claim of Defamation by Implication was Properly Addressed and Fails.

Plaintiff argues that "[i]mplications arising from a literally true statement can form the basis

of an action for defamation" and that '[d]efamation by implication occurs where a statement can

"reasonably be understood … to convey a false representation of fact" citing to various cases.

Doc. 21, at 14. Plaintiff also argues that "Plaintiff bears the burden of pleading statements that

either expressly or implicitly convey a false representation of fact." *Id.* Plaintiff further argues

that the Motion to Dismiss does not "acknowledge that defamation by implication is actionable

or discuss, in any respect, the Letter's defamatory implications." *Id.* at 32.

Putting aside that the Amended Complaint (Doc. 9) failed to plead a separate count of

defamation by implication, Plaintiff must plausibly plead that the alleged defamatory statements

"affirmatively suggest that the [alleged] author[s] intended or endorsed the inference." *Chapin v.*

*Knight-Ridder*, 993 F.2d 1087, 1092-93 (4th Cir. 1993).[13] With the lone exception of Paragraph

22, Plaintiff did not even aver generally (let alone plausibly plead) that Defendants "intend[ed]

or endorse[d] the [alleged] inference[s]" from the Letter (or any other alleged statement) which

Plaintiff attributes to them. *Id.*; Doc. 9. As for paragraph 22, Plaintiff alleges that attributing the

use of the word "tribal" to him "intentionally and falsely implies" that he is "racist, bigoted,

and/or prejudiced against minorities and/or poor individuals," (Doc. 9) to which Defendants

argued in the Motion to Dismiss (Doc. 13-1) that: (a) Plaintiff negated the allegation that this is

the natural inference of "tribal" by arguing in Paragraph 70 of the Amended Complaint (Doc. 9)

that a derivative of the same word ("tribalism") does not naturally carry this inference; and (b)

---

[13] This is within the scope of Defendants' argument that Plaintiff failed to plausibly plead actual malice.

that such an implication can "be justified" (such that Plaintiff fails to plausibly plead falsity) because instead of technically using the word "tribal," Plaintiff claimed in his "tribalism" lecture that the bathing habits of Flint residents led to the shigella outbreak (despite the CDC data not appearing to support this claim) and appeared to echo colonial depictions in his lecture by saying "there are reasons that we take baths and showers, basic public hygiene." Doc. 13-1, at 22.

Further, the alternative cause of action for defamation by implication does not acquit Plaintiff of his obligation to plausibly plead actual malice – that Defendants had actual or constructive knowledge of falsity. As addressed above, Plaintiff fails to plausibly allege actual malice and even cites an outdated pleading standard to argue erroneously that he did not need to. Further, Plaintiff waived nearly the totality of the alleged defamation by implication in his concession in Paragraph 43 of the Amended Complaint (Doc. 9) that "they appear to **believe** he represents government interests and **does not perform objective testing**" which gets to the thrust of the alleged claims of defamation by implication regarding Plaintiff's ethics. Defendants, by definition, would not have knowledge of falsity regarding something that they **believe**.

What little may remain of the alleged defamation by implication was actually addressed at length in the substantial truth section of the Motion to Dismiss[14] pointing to Plaintiff's bragging about being a "troublemaker" who uses "ridicule" as a "weapon," (Doc. 13-2) his frequent takedown exposés of potential rivals (*Id.*, Doc. 9-1, Doc. 13-3) like Mark Ruffalo and Shawn McElmurry (the latter he wrote about as "The People of the State of Michigan"), referring to at least some Flint residents as "anti-science" and living in the "dark age," (Doc. 13-2, 13-3, 13-5, 13-6) and his proclamation that Flint residents' bathing habits led to the shigella outbreak (Doc.

---

[14] It's possible that Plaintiff just honestly missed this because the Amended Complaint alleges several hundred instances of defamation (many are duplicative) in addition to every word Defendants ever said in Paragraph 64.

13-3) even though he has no degrees or expertise in microbiology. Doc. 13-1, at 29. The "gist"[15] of the Letter, including the inferences Plaintiff alleges from it, can "be justified" by Plaintiff's own words and actions in the exhibits properly before this Court. *Masson,* 501 U.S. at 517 (1991).

Further, the Motion to Dismiss properly argued that the Letter was protected opinion because all of the alleged statements represent the subjective views of partisans in the context of a heated public health debate. Doc. 13-1, at 15-16, 18. *See, e.g., Arthur v. Offit*, 2010 WL 883745, at *6.[16] The Motion to Dismiss also pointed to figurative language in the Letter including: (a) "as far as we know"; (b) that the letter expressed that Plaintiff stopped listening to residents; and (c) that he supplanted Flint residents' voices with his own which all support the proposition that the Letter (Doc. 9-1) did not profess to be more than the position of its signatories in the context of a public health debate. Doc. 13-1, at 15, 29. Plaintiff's defamation by implication claim fails.

**D.  Plaintiff's Case Comparator is Radically Off-Base.**

The primary case comparator Plaintiff cites in support of this action regards express statements accusing an attorney of acting in a way that "constitutes extortion or violates a law or rule of professional conduct" which are verifiable statements of fact. *Cretella v. Kuzminski*, No. 3:08-CV-109, 2008 U.S. Dist. Lexis 42152 at *15-16 (E.D. Va. May 29, 2008). Plaintiff claims that this case is "directly on point" because Defendants have allegedly made "explicit and implicit statements accusing him of ethical violation and/or harmful professional misconduct"

---

[15] This term is distinguished from literal truth and is synonymous with the thrust or implications.

[16] Within the scope of Defendants' substantive argument that the alleged statements in the Amended Complaint are protected opinion in their entirety, the one claim of defamation by implication that Plaintiff even averred generally, that the term "tribal" can carry the connotation that Plaintiff is racist or bigoted is non-actionable opinion.
Courts have ruled that generalized assertions that a person is racist or bigoted are specifically non-actionable. *See, e.g., Forte v. Jones*, 2013 U.S. Dist. LEXIS 39113, at *15 (E.D. Cal. Mar. 20, 2013) ('it is important to stress that it is the allegation of membership in the Ku Klux Klan that is actionable; the allegation that a person is a "racist," on the other hand is not actionable because the term "racist" **has no verifiable meaning**') (bolded for emphasis).

and that Defendants allegedly "did in fact directly report Plaintiff to his employer and his professional community for his alleged unethical and improper conduct." Doc. 21, at 15.[17]

In *Cretella*, attorney Vic Cretella mailed a cease-and-desist letter on behalf of a client to author Christine Norris which incensed a member of an online forum who posted statements "it's time to report Vic Cretella to the Maryland Bar association for attempted extortion" and accusing Mr. Cretella of "attempting to attack [another] writer." *Cretella*, 2008 U.S. Dist. Lexis 42152, at *1-3. Further, the defendant in *Cretella* emailed a complaint to the state bar. *Id.* at 2. The defendant in that case had no dealings with Mr. Cretella. *Id.*

Unlike *Cretella*, Plaintiff in this case must plead actual malice in accordance with Rule 8's plausibility standard whereas Mr. Cretella, as a private figure prior to the rulings in *Iqbal* and *Mayfield*, only needed to "generally aver" negligence – these are radically different standards. Further, in contrast with *Cretella*, the current case regards statements made by opposing parties in the context of a longstanding public health debate regarding the Flint water crisis (matter of public concern), Plaintiff is a public figure and quasi-public official (Doc. 9, at ¶5; Doc. 13-2), and Plaintiff's conduct which the alleged statements are made in regard to has direct implications on the health and well-being of Flint residents like Defendant Mays. Moreover, Defendants have not accused Plaintiff of criminal conduct.[18]

As for Defendants' alleged claims of rhetorical attacks by Edwards, he brags about using "ridicule" as a "weapon" (Doc. 13-2) and the statements were in response to such things as Plaintiff calling Defendant Schwartz a "coward" four-times over and mocking him for grieving his dead son (Doc. 13-8), doing frequent takedown exposés of potential rivals such as Shawn

---

[17] The Letter asks to be told where a formal complaint can be made which, by definition, means that the Letter was not a formal complaint nor did it pretend to be, but rather was an expression of frustration about a lack of recourse and accountability regarding the actions of a quasi-public official that Flint residents cannot vote out. Doc. 13-1.
[18] Only Plaintiff's counsel has bizarrely alleged this in a paragraph on defamation by implication Doc. 9, at ¶76.

McElmurry and Mark Ruffalo (Doc. 9-1, Doc 13-2, Doc. 13-3), or referring to Defendant Mays

and Dr. Laura Sullivan (another Flint resident) as "usual suspects" trafficking in "conspiracy

theories" and allegedly spreading "hate and social anarchy." Doc. 13-1, at FN 30. By contrast,

the Defendant in *Cretella* had no prior personal dealings with Mr. Cretella and was remarking on

cease-and-desist letters to third parties. Plaintiff betrays the weakness of his case by trying to

claim *Cretella* is "directly on point." Doc. 21, at 15. It is not.[19]

**E. Defendants Exhibits and Documents are Properly Before the Court by Reference, Integral Nature, and/or Judicial Notice.**

*Defendants' Exhibits are Incorporated by Reference*

Plaintiff concedes that Defendants introduced "**documents that were referred to in the**

**Amended Complaint**" citing to Doc 13-1 at FNs 1-2, 5, 7, 9, 10, 11, 27 and Exhibits 1-6. Doc.

21, at 2. Courts considering a motion to dismiss may also rely upon those documents attached as

exhibit or incorporated by reference. *Montgomery Cnty. Police Officers*, 762 F. 2d 30, 31 (4th

Cir. 1985). The Eastern District of Virginia has explained that "when a plaintiff fails to introduce

a pertinent document as part of his complaint, the defendant may attach the document to a

motion to dismiss the complaint and the Court may consider the same without converting the

motion to one for summary judgment." *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 335

(E.D. Va. 2005), aff'd 193 F. Appx. 248 (4th Cir. 2006) (bolded for emphasis). The Court in

*Davis* went on to say in no uncertain terms, "**[a]ny documents referenced in the complaint can**

---

[19] Plaintiff also cites to numerous cases of dubious precedential value. For instance, (in Doc. 21, at 17, FN 5) Plaintiff cites to *Echtenkamp v. Loudoun Pub. Sch.*, 263 F. Supp. 2d. 1043, 1064 (E.D. Va. 2003) which was abrogated in *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 510 n.4 (E.D. Va. 2016) (observing *Echtenkamp* conflicts on the grounds cited by Plaintiff in this case with a subsequent ruling by the Virginia Supreme Court, *Raytheon Tech. Servs. Co. v. Hyland*, 273 Va. 292 (2007). Additionally, apart from *Eramo* (addressed in footnote 7 of this document), Plaintiff's case comparators (Doc. 21, at 15-18) are universally prior to *Iqbal*, *Twombly*, and *Mayfield* (applying Rule 8's plausibility standard to actual malice), are not public figure cases, and/or are solely matters of private rather than public concern. Plaintiff simply does not cite relevant case law.

**properly be attached to the defendant's motion to dismiss.**" *Id.* The only analysis that the Court felt necessary to conduct on this point is: "Here, the September 8, 2005, letter from GMU that the Defendant attached was referenced to in the Complaint… Therefore, Defendant's Motion to Dismiss is proper in that it does not include materials outside of the complaint." *Id.; see also Lindsay v. Nichino Am., Inc.*, 202 F. Supp. 3d 524, 531 n.6 (M.D.N.C. 2016) (finding that the court could consider a 32-page instruction booklet without converting to a motion for summary judgment because the item was referred to in the complaint).

Plaintiff notably does not cite a single case in support of his proposition that the Court should either not consider the referenced documents or that the Motion to Dismiss should be converted to a Motion for Summary Judgment nor does he contest the factual veracity or authenticity of the documents. Doc. 21, at 2-3. Instead, Plaintiff simply complains that the inclusion of these documents is negative to his case. Plaintiff's assertion has absolutely no support in case law.

### *Defendants' Exhibits are Integral to the Litigation*

When ruling on a motion to dismiss, a court "may consider documents… attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence*, 484 F.3d 700, 705 (4th Cir. 2007). Plaintiff's preliminary concession that these documents were referenced in the Amended Complaint is sufficient under existing case law for this Court to consider these documents without converting the Motion to Dismiss into a Motion for Summary Judgment and further a review of the documents underscores they are "integral."

Footnote 1 is a citation to case law which is allowed. Doc. 13-1. Footnote 2 is a citation to Defendant's Exhibit 1 (Doc 13-2), the article in New York Times Magazine, which Plaintiff alleges in Paragraph 48 that all three Defendants defamed him within – the Court would have to consider the document to assess the plausibility of Plaintiff's claim of defamation. Doc. 9.

Footnote 5 is a citation to Exhibit 2 (Doc. 13-3), Plaintiff's speech on "tribalism" at Swarthmore College which is cited in support of the "tribal" comment in the Letter (Doc. 9-1) that Plaintiff alleges is defamatory in paragraphs 13(h), 22, and 70. Doc. 9. Plaintiff states that the alleged defamatory nature of the statement should be "[v]iewed in the context of the entire letter" (which would include the citation to the Swarthmore speech) and even refers to what is "in the transcript of Edwards' presentation that is referred to in the Letter." Doc. 9, at ¶¶22, 70.

Footnote 7 is a citation to Defendant's Exhibit 3 (Doc 13-4), a May 23, 2018 email to Flintcomplaint@gmail.com, which Plaintiff cites to as evidence of actual malice claiming that the email: "challeng[ed] misrepresentations"; "provid[ed] clarifications and supporting citations of his statements that were mischaracterized in the Letter"; and "attempted to demonstrate the falsity of the Letter's statements and misattributions" – an email that alleges to provide evidence of actual malice is obviously an integral document. Doc. 9, at ¶75.

Footnote 9 and 10 are citations to Defendants' Exhibit 5 (Doc. 13-6) and 4 (Doc. 13-5), respectively, are both referenced explicitly in paragraph 25 of the Amended Complaint and more generally in paragraph 75 regarding Plaintiff's "associated media comments." Doc. 9. Plaintiff alleges that Defendants' alleged characterization of Edwards' remarks to the press after the Letter was published are defamatory and as a result the content of these statements by Plaintiff to the media are necessary to appraise this claim. *Id.* at ¶75.

The article in Footnote 11 is a reference to Defendants' Exhibit 6 (Doc. 13-7), which is directly cited by title in Paragraph 74 as alleged proof of actual malice. Doc. 9. Plaintiff alleged that this article "attempted to correct factually false attacks by Defendants" and allegedly clarified that Plaintiff never said Flint water was "safe" or that the "the Flint water crisis is over." *Id.* Plaintiff further alleges that the post "includes the actual video and transcript of the press

conference." *Id.* This same paragraph states that Defendant Lambrinidou allegedly defamed Plaintiff in response to this post by indicating her "disinclination to consider Edwards' factual assertions." *Id.* The document was referred to at length in the Amended Complaint and the Court is allowed to consider these statements on a Motion to Dismiss.

Finally, Footnote 27 is a reference to Defendants' Exhibit 7 (Doc. 13-8), which is referred to at length in Paragraphs 9 and 73 of the Amended Complaint, where Plaintiff alleges that the statement "[t]he time for conversation and debate is long past" indicates "that he and co-defendants were not interested in and would not consider Edwards' efforts to make them aware of the truth." Further, Plaintiff makes additional references to subsequent responses by Defendant Schwartz and Plaintiff in the email chain. Doc. 9, at ¶73. Again, the document was referred to at length in the Amended Complaint and the Court is allowed to consider statements that are allegedly proof of actual malice in their totality and in context without converting a Motion to Dismiss to a Motion for Summary Judgment.

Plaintiff concedes that the aforementioned exhibits were referenced in the Amended Complaint, a survey of these documents indicates that they were referenced at length, and the Court has every right to assess the referenced documents on a Motion to Dismiss under existing case law. As such, Plaintiff's two "object[ions]" regarding the inclusion of these documents and his allegation of "Defendants' implicit attempt to transform this motion into a Motion for Summary Judgment" are invalid and in direct contravention to existing case law. Doc. 21, at 4.

### Judicial Notice of News Articles and Academic Papers

The Eastern District of Virginia ruled in 2015 that a "court may take judicial notice of newspaper articles in the motion to dismiss stage when the articles discuss the subject matter of the case." *Advanfort Co. v. Int'l Registries, Inc.* 205 WL 2238076 at n.10 (E.D. Va. 2015). The

Court in *Advanfort* does not narrow the scope to Defendant's proposition, unsupported by any case citation at all in his opposition papers, that the Court may only take judicial notice of "documents referred to in a complaint when deciding a motion to dismiss." Doc. 21, at 26.

Footnote 3 (Doc. 13-1), which is referenced as an "extrinsic document[]" is a citation to case law. Doc. 21, at 2. Footnote 12-17 (Doc. 13-1) are news articles that attribute to Plaintiff the position that the Flint water crisis had ended and that the water is safe – this is plainly about the subject matter of the case as Plaintiff alleges that attributing these positions to him should be construed as defamation and proof of actual malice. Doc. 9, at ¶74. Similarly, Footnotes 25-26 (Doc. 13-1) relate to the subject matter of the case because Plaintiff brings up in the discussion of alleged damages Plaintiff's receipt of grant funding and also alleges it is defamatory and proof of actual malice to assert that he received certain grant funding that CNN and MLive reported that he did. Doc. 9, at ¶¶ 72-80. Finally, Footnote 30 (Doc. 13-1) was directly referenced in the Amended Complaint in the clause "[a]fter Edwards team demonstrated that the viral photograph was not taken a few days earlier, but was actually from 2015 during the height of the water crisis" and this post is what Defendant Mays' alleged defamatory statement referenced. Doc. 9, at ¶63. Plaintiff concedes that this Court can take judicial notice of documents such as Footnote 30 "referred to in a complaint when deciding a motion to dismiss." This also is in the form of a news article or blog that directly relates to the subject matter of the case on its face.

Furthermore, federal courts have ruled that judicial notice "is properly taken of available historical articles attached to [Defendant's] motion to dismiss" where the documents are relied not for the truth or falsity of the underlying documents but to merely show that the statements were made. *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013). The ruling in *Farah* applies to all of the aforementioned articles: (a) the Court can consider the articles attributing

statements about whether the Flint water crisis had ended and whether the water was safe, not to establish whether the Flint water crisis actually ended but instead to show that these statements were reported by the media (Doc 13-1, at FN 12-17); (b) that CNN and MLive reported that Edwards received certain grant money, not whether or not Edwards actually did receive the grant money (*Id.* at FN 25-26); and (c) that Edwards and his team rhetorically attacked Defendant Mays and Dr. Laura Sullivan as liars and conspiracy theorists, not to assess the truth or falsity of his vituperative charges against them (*Id.* at FN 30). Furthermore, the scholarly article co-authored by Plaintiff in Footnote 18 gets in under *Farah* to establish that Plaintiff did sign his name to a paper stating the Flint water crisis ended in 2016, not to prove the truth of the underlying statement of whether or not it actually did end in 2016. Doc. 13-1. Footnotes 19-20 which Plaintiff also refers to in paragraph 66 of the Amended Complaint can also get in under *Farah* again not to prove whether Flint residents' bathing habits led to the shigella outbreak but rather to establish what was reported on this topic. *Id.* Similarly, the Court can consider the data produced by the CDC and Michigan Department of Health and Human Services not to prove the truth of the matter asserted (whether they are correct), but to merely show that the CDC did actually report these findings and data. *Id.* at FN 4.

Finally, a court may take notice of historical or statistical facts that are verifiable with certainty. *Mintz v. FDIC*, 729 F. Supp. 2d 276, 278 n. 2 (D.D.C. 2010). The 1885 Proctor & Gamble ad claiming that Ivory soap made the indigenous population civil is such a historical fact drawn from an academic textbook which this Court can take judicial notice of. Doc. 13-1 at FN 6. Similarly, the CDC data on the shigella outbreak are statistical facts that are verifiable with certainty and Plaintiff does not contest the authenticity of this CDC report.[20] Doc. 21, at FN 7.

---

[20] Plaintiff alleges he referred to CDC data on shigella (Doc. 9, at ¶¶18, 66) and claimed as defamation Schwartz' citation of this presentation done jointly with the Michigan Department of Health and Human Services. *Id.* at ¶49.

This Court has authority under existing case law to take judicial notice of these articles and documents. Notably, Plaintiff does not cite any case law in making his vague and generalized objection to the inclusion of these items in Defendants' Motion to Dismiss.

F. **Addressing Plaintiff's Claim That There Exists a Single Contested Fact.**

In his opposition papers, Plaintiff states that he intends to present at trial a "CDC PowerPoint presentation explicitly stating that bathing habits **contributed** to Flint's shigella outbreak" in furtherance of the alleged proposition that Plaintiff Edwards did not make public pronouncements about a shigella outbreak impacting Flint inconsistent with CDC data. Doc. 21, at FN 7. Plaintiff's counsel inadvertently proves Defendants' point and establishes that there exists no **material** dispute of fact because in Plaintiff's Swarthmore College "tribalism" speech, cited to in the Letter (Doc. 9-1) and properly before this Court, Plaintiff spoke of Flint residents' lack of bathing as the primary factor, not a mere **"contributing"** factor. Doc. 13-3. For instance, Plaintiff proposes that there was a **"shigella curve"** showing a direct relationship between bathing habits and occurrences of shigella, that "nobody knew about at the time." *Id.* He further proclaims that Mark Ruffalo's group scared people out of bathing leading to Flint suffering "one of the worst shigella outbreaks in history." *Id.* Plaintiff's public health dictates on this point stretch well beyond even the new factual allegation he attributes to the CDC.

Notably, Plaintiff does not allege that he will present CDC **data**, which the Amended Complaint refers to (Doc. 9, at ¶¶18, 66), but rather a statement within a CDC PowerPoint. Doc. 21, at FN 7). The document in Footnote 4 of the Motion to Dismiss (Doc. 13-1) refers to the **data**[21] compiled by the CDC and the Michigan Department of Health and Human Services on 83

---

[21] Plaintiff also takes exception to a single iteration in Doc. 13-1 of the statement that this data "directly refutes" Plaintiff's "shigella curve" theory. At minimum, this data does not appear to support Plaintiff's "shigella curve" theory and he is not a microbiologist – the difference between the two is not material in this case. Doc. 21, at FN 7.

individuals across two counties (Genesee and Saginaw County) who suffered shigella from the outbreak. Doc. 13-1, FN 4. Further, these results included DNA fingerprinting showing nearly identical genetic markers in the bacterial strains indicating that people in Genesee County (where Flint is) and Saginaw County (unimpacted by the water crisis) experienced a single, common outbreak. *Id.* Moreover, the data shows comparable bathing habits between residents of Genesee County and Saginaw County: (a) 34% of those afflicted in Saginaw County used hand sanitizer and cleaning wipes as a method to clean hands versus 26% of those afflicted in Genesee County; (b) 93% of those afflicted in Saginaw County used water (of some form) to clean hands versus 82% of those afflicted in Genesee County; (c) 0% of afflicted individuals from either county used hand sanitizers and cleaning wipes in lieu of showers; (d) 91% of afflicted Flint residents took water showers (of some form) compared to only 77% in surrounding areas of Genesee County. *Id.* This data shows comparable bathing habits of those **specifically infected** across the impacted locales, the DNA markers indicate Flint residents suffered the same outbreak as that experienced by individuals in surrounding areas of Genesee County and neighboring Saginaw County. *Id.* Finally, the final finding in this report, which actually contained **data**, was that the use of hand sanitizer and cleaning wipes as a replacement for handwashing "did not contribute to the outbreak differently in one location versus another" which conflicts with claims in Plaintiff's Swarthmore "tribalism" speech. *Id.*; Doc. 13-3.

Finally, Defendants object to the introduction of the claim that there exists a "CDC PowerPoint presentation explicitly stating that bathing habits contributed to Flint's shigella outbreak" which the record suggests is a new factual allegation. Doc. 21, at FN 7. For example, in Paragraph 20 of the Amended Complaint (Doc. 9), Plaintiff cites to an earlier CDC study focused solely on Flint residents' bathing habits and did not address shigella at all. Plaintiff also

linked only to this earlier study in defense of his shigella and bathing claims in an email to FlintComplaint@gmail.com on May 23, 2018 (Doc. 13-3) which Plaintiff stated in Paragraph 75 of the Amended Complaint was him "providing clarifications and supporting citations." Doc. 9. Further, Plaintiff only refers to that earlier study solely about bathing habits in his Swarthmore College "tribalism" speech. Doc. 13-2. Once more, Plaintiff refers to as a basis for his shigella claims in the Amended Complaint articles in the New York Times and Washington Post that only refer to the earlier study. Doc. 9, at ¶66. [22]

While Defendants argue that Plaintiff improperly makes for the very first time in his reply brief the factual allegation that a CDC PowerPoint presentation exists explicitly stating that altered bathing habits "**contributed**" to the shigella outbreak, Defendants are cognizant that the Court's hands might be tied because Plaintiff will refer to Doc. 9, at ¶18 which loosely states: "Edwards always referred to, or spoke consistently with, data and/**or reports** from the Center [sic] for Disease Control." Regardless, Defendants argue that a genuine dispute of material facts does not exist because Plaintiff's Swarthmore "tribalism" speech (Doc. 13-3) spoke of Flint residents' lack of bathing being the primary factor, not a mere **contributing** factor, in advancing his "shigella curve" theory. In the alternative, should the Court not find either argument compelling, Defendants would make a limited-waiver (for purposes solely of the Motion to Dismiss) [23] of the argument that Plaintiff made statements inconsistent with the CDC but maintain that the document from Footnote 4 (Doc. 13-1) properly supports the lesser argument made by Defendants that this shows a basis for Defendants believing Plaintiff's dictates were inconsistent with the CDC. Doc. 13-1, at 28 (lines 7-16), 29 (line 14) ("based on").

[22] Plaintiff cites to Doc. 9, at ¶¶ 65-75 to allege that he "put Defendants on notice that they were disseminating falsehoods." Doc. 21, at 24. It strains credulity that if Plaintiff had relied upon this newly alleged information, which he now claims confirms his position, that he would exclude it from these public statements and emails.
[23] Defendants would reserve the right to contest this point in the unlikely event the case moves past this Motion.

Stepping back, Plaintiff illustrates the weakness of his case by arguing that it hinges, at least in part, on this hyper-technical scientific argument over whether or not Flint residents' bathing habits led to their own shigella outbreak and that to prevail he would need this Court to declare him correct on this point – that "Plaintiff intends to introduce [this] at trial." Doc 21, at FN 7. This is the type of inquiry that the courts in *Underwager* and *Offit* refused to engage in. As Judge Easterbrook eloquently put it: "Scientific controversies must be settled by the methods of science rather than by the methods of litigation... More papers, more discussion, better data, and more satisfactory models — not larger awards of damages — mark the path toward superior understanding of the world around us." *Underwager v. Salter*, 22 F.3d 730 (7th Cir. 1994).

**G.  Plaintiff's Objection to the Applicability of Va. Code § 8.01-223.2 is Baseless.**

Va. Code § 8.01-223.2 plainly applies in the instant case because: (a) Plaintiff has not plausibly plead actual malice; (b) Plaintiff concedes that the actual malice standard would apply even independent of the statute (i.e. Plaintiff is a public figure) (Doc. 21, at 33); (c) Plaintiff "agrees that that Virginia law should govern the issues raised in this motion" (*Id.* at FN 2); and (d) Plaintiff concedes that "Defendants' alleged tortious conduct occurred in the context of an ongoing public debate regarding the well-known water and public health crisis in Flint, Michigan" (a matter of public concern). *Id.* at 1.

H.  **Plaintiff's Personal Jurisdiction Argument Fails.**

Plaintiff concedes in the first paragraph of his opposition papers that "Defendants' alleged tortious conduct occurred in the context of an ongoing public debate regarding the well-known water and public health crisis in Flint, Michigan." *Id.* The case at bar regards the Letter which was allegedly only sent to a single Virginia recipient requesting an action to occur in Flint Michigan – "send representatives to Flint as soon as possible" – in addition to at least 15 non-

Virginia recipients (major scientific and engineering organizations). Doc. 9, at ¶¶10-13, Doc. 9-1. The content of the Letter solely regarded Plaintiff's conduct regarding the community of Flint, Michigan – nowhere else. Doc. 9-1. These are Plaintiff's facts conceded in his opposition papers, alleged in his Complaint and attached as his sole exhibit.

This case is the polar opposite of *Calder v. Jones,* 465 U.S. 783 (1984) where personal jurisdiction was found appropriate in California where a Florida publication's story focused on the California career of a California resident and used California sources. Here, the Letter had nothing to do with Plaintiff's work or conduct in Virginia, but instead regarded Plaintiff's acts or omissions in the state of Michigan, in his capacity as a de facto agent of the State of Michigan and sought to effectuate an outcome in Michigan. Doc. 9-1; Doc. 13-2.

Despite the Amended Complaint alleging these very facts, Plaintiff makes a bald-faced claim coupled with the rhetorical flare of the word "specious" in his opposition papers stating: 'it is specious to suggest that "the alleged actions of Defendants were not predicated upon Plaintiff's work, acts or relationships with the Commonwealth nor did they seek to effectuate an outcome in Virginia." Doc. 21, at 29. Plaintiff then cites *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 397 (4th Cir. 2003), to state that "even a single contact **may** be sufficient." (bolded for emphasis). Next, Plaintiff baldly claims that the Letter sent to at least sixteen recipients (only one of which is alleged to be in Virginia) asking for representatives to be sent to Flint, is somehow a contact of "such significance and quality, [sic] because the case arises from this Letter." Doc. 9, at ¶¶10-13; Doc. 21, at 29.[24] That argument has no basis in case law.

---

[24] The only act which Plaintiff argues was of such "significance and quality" to confer jurisdiction was the distribution of the Letter to a single Virginia recipient, along with at least 15 non-Virginia recipients. Doc. 9, at ¶¶10-13. Plaintiff alleges, with reference to metadata, that this was sent by email from Defendant Mays' computer. Doc. 9, at ¶59. Further, while Plaintiff alleges Defendants "collaborated" to "draft the contents of the Letter," he does not allege that they "collaborated" to distribute the letter to Virginia. Doc. 9, at ¶58. In fact, Plaintiff **fails to argue or allege any basis for specific personal jurisdiction over Defendants Lambrinidou and Schwartz**.

That Plaintiff's case fails for lack of personal jurisdiction is made clear in his opposition papers by his comparison to and nearly two-page excerpt from *First Am. First, Inc. v. National Ass'n of Bank Women, 802 F.2d 1511, 1516-18 (4th Cir. 1986)*. Based on the excerpt, in that case "allegedly defamatory letters" were "directed in their **intended effect at the activities in Virginia of Virginia residents**." (bolded for emphasis). That is simply not the case at bar – Plaintiff is a quasi-public official in Michigan (Doc. 13-2), the Letter (Doc. 9-1) regarded solely his conduct in Michigan, the Letter requested representatives be sent to Michigan, only one of at least sixteen recipients are alleged to be in the Commonwealth (Doc. 9, at ¶¶10-13), and the subject matter regards the public health of Michigan residents in which that state has an overarching and compelling interest. Plaintiff fails to satisfy his burden on personal jurisdiction.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request this Court DISMISS Plaintiff's Amended Complaint and GRANT Defendants' reasonable attorney's fees.

Respectfully Submitted,

HAWGOOD, HAWGOOD & MORAN, LLP

<u>/s/William Moran II, Esq.</u>
William Moran II, Esq. (*Pro Hac Vice*)
Attorney for Defendants
Moranmedialaw@gmail.com
10015 Old Columbia Rd., Ste. B215
Columbia, Maryland 21046

<u>/s/Arthur P. Hawgood III, Esq.</u>
Arthur P. Hawgood, III Esq. (VSB# 91287)
Attorney for Defendants
Arthur@HawgoodLaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of October, 2018, I electronically filed the foregoing Reply Memorandum in Further Support of the Second Motion to Dismiss by Defendants – Paul Schwartz, Yanna Lambrinidou and Melissa Mays – with the Clerk of the Court using the CM/ECF system, which will then transmit a notification of filing (NEF) to all registered users, and I further certify that, to the extent that any of the following persons are not registered users of said system, copies of the aforementioned document have been mailed to such persons, first-class, postage prepaid on this date.

Jeremiah A. Denton III, Esq.
Jeremiah A. Denton IV, Esq.
Jeremiah A. Denton III, P.C.
477 Viking Dr., Suite 100
Virginia Beach, VA 23452

/s/Arthur P. Hawgood III, Esq.

Arthur P. Hawgood, III Esq. (VSB# 91287)